[No. D005029. Fourth Dist., Div. One. Nov. 5, 1986.]

JOHN J. AUGUSTYN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc.,
Real Party in Interest.

COUNSEL

Klitgaard & Jones and Robert J. Klitgaard for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Neal J. Gobar, Deputy Attorneys General, for Real Party in Interest.

OPINION

LEWIS, J.—The California State Real Estate Commissioner petitioned under Business and Professions Code[1] section 10474.5 to consolidate all claims against the commissioner's recovery fund (Fund) involving alleged fraudulent conduct of broker Wayne Burton and his agents, and to prorate the recoveries of individual claimants against the Burton fund. The claims exceeded the available funds in that account. On May 9, 1986, the matter was assigned for all purposes to Judge Jack R. Levitt. On July 25, 1986, he determined on a motion for declaratory relief the legal issue whether a claimant defrauded by one of Burton's licensed agents could recover against both the agent's account and the Burton account. Judge Levitt determined only one recovery, against the Burton fund, was allowable under sections 10471 and 10474.

Petitioner, John J. Augustyn, claims he was defrauded by licensed sales agent Gulve, an employee of Burton. After Judge Levitt decided the declaratory relief issue, Augustyn filed a peremptory challenge against Judge Levitt under Code of Civil Procedure section 170.6. Judge Levitt denied the challenge as untimely.

Augustyn now seeks writs of mandate and prohibition, contending (1) Judge Levitt wrongly decided that only one recovery against the Fund for each claimant is permitted, and (2) the challenge to the judge was timely, within the doctrine of *Zdonek* v. *Superior Court* (1974) 38 Cal.App.3d 849 [113 Cal.Rptr. 669].

We have determined (1) the ruling regarding recovery against the agent's fund account is not properly reviewable at this time and (2) the challenge to Judge Levitt was not timely. Accordingly, no writ will issue.

_____

[1]All statutory references are to the Business and Professions Code unless otherwise specified.

I. *The Declaratory Relief Judgment*

The agreed facts for purposes of these preliminary proceedings show one Wayne Burton, a licensed real estate broker, began in 1980 to perpetuate a statewide Ponzi scheme persuading investors to purchase second trust deeds supposedly secured by equity in California real estate but in fact either not secured at all or far more risky than what had been promised. Many misrepresentations were made regarding the nature and worth of the underlying securities. Burton had eight offices stretching from Sacramento to San Diego staffed with investment counselor employees, some independently licensed, some not.

According to Augustyn, by the time the Securities Exchange Commission (SEC) intervened and imposed a receivership, some 6,000 California consumers had purchased $100 million in promissory notes from approximately 36 real estate licensees working with Burton.

Augustyn purchased two promissory notes from Kai I. Gulve, a real estate licensee acting as an investment counselor in Burton's organization. Augustyn has secured a judgment against Gulve for losses but has not sued Burton. Gulve has filed bankruptcy. Unable to recover all of his judgment from Gulve, Augustyn has also sought recovery against the Gulve recovery account fund but has not applied for any recovery against the Burton recovery fund.

The Real Estate Education, Research and Recovery Act (§ 10470 et seq.) under stated circumstances allows compensation to persons defrauded by real estate licensees. The liability of the Fund is generally limited to $20,000 per transaction and $100,000 for any one licensee, for causes of action accruing after January 1, 1980 (§ 10474, subd. (c)). Where the recovery account is insufficient to pay all valid claims against it in full, section 10474.5 authorizes consolidation of all claims into one action and equitable proration of payment.

Here, the commissioner requested such consolidation of all claims not only against Burton but against all his employees, for purposes of (1) deciding how many recoveries might be available to each claimant and (2) determining the validity of all claims and prorating recovery. The declaration of the deputy attorney general representing the commissioner said the proceeding involves solicitation of funds from more than 5,000 investors by Burton or his corporation, using more than 50 agents, only some of whom were licensed. The basic pattern of each transaction "seems to be the same." The commissioner asked the court first to resolve the question whether the investors dealing with separately licensed investment counselors should be

entitled to additional recoveries against the Fund or whether all claimants defrauded by Burton's scheme should be limited to recovery against the Burton fund. The declaration also stated the need to expedite the proceedings, a need agreed to by Attorney Klitgaard, then representing all the applicants named in the consolidation petition.

On May 9, 1986, the court granted the request for joinder of all claims against Burton or any of his investment counselors and stayed all other actions against the Fund arising out of the Burton scheme.

After submission of papers and argument, Judge Levitt ruled each claimant would be limited to one recovery, against the Burton account in the Fund. The commissioner argues the decisions in *Fox* v. *Prime Ventures, Ltd.* (1978) 86 Cal.App.3d 333 [150 Cal.Rptr. 202] and *Deas* v. *Knapp* (1981) 29 Cal.3d 69 [171 Cal.Rptr. 823, 623 P.2d 775] support the ruling. Each decision holds that on its facts only one recovery against the Fund was proper, despite the fortuitous circumstance that more than one licensee participated in defrauding the buyer. The court said in *Deas* v. *Knapp, supra*: "[W]here the transaction giving rise to the judgment arose out of acts for which only one license was required, recovery is limited by the amount stipulated in the statute 'for any one licensee.'" *(Id.* at p. 75, quoting partly from *Fox* v. *Prime Ventures, Ltd., supra,* at pp. 334-337.)

■ The commissioner argues preliminary review by extraordinary writ of the declaratory relief decision is inappropriate. The matters were consolidated in order to expedite the decision making process for all parties. The consolidation is still in process. The present declaratory relief ruling, however, was intended to be a final judgment between the commissioner and the particular applicants, now parties, to permit a prompt appeal and resolution of that question as to them. Such an appeal would be the fair and orderly method of review. This petition, it is argued, is brought by only one individual claimant, Augustyn; and if we were to determine the issue as to him, the claims of others would remain for piecemeal determination. Allowing such case-by-case mandate review, the commissioner says, would be repetitive and wasteful and delay ultimate resolution of the matter.

We agree with the commissioner that not only does the normal appellate remedy appear to be adequate, but it is the preferred remedy in light of the potential inefficiency of individual review of each challenge by prerogative writ. Further, we perceive no obvious or manifest abuse of discretion here; the court's ruling is supported by the decisions cited, and Augustyn cites no authority directly construing the Recovery Act so as to permit more than one recovery in a situation where, as here, only one license was necessary to complete the transaction. (See language from *Deas* v. *Knapp,* quoted

*supra.*) Accordingly, we conclude writ review of the declaratory relief judgment is unwarranted.

## II. *The Peremptory Challenge to Judge Levitt*

■ Here the record shows Judge Levitt was chosen as the judge for all purposes on May 9, 1986. Although the record does not formally reflect actual consent to the assignment of Judge Levitt, respondent asserts in the answer to the petition that Augustyn's attorney, Klitgaard, agreed to the request for assignment to one judge for all purposes before the presiding judge and Klitgaard suggested Judge Levitt as the judge to be assigned and respondent agreed. That assertion is not denied in the replication to the answer, and we take it to be true. Augustyn did not challenge Judge Levitt until August 8, 1986, after he had already decided the declaratory relief issue. Augustyn did not, at any time, challenge the consolidation of the matters.

Section 170.6 of the Code of Civil Procedure establishes various time limitations for the peremptory challenge of a judge. The general rule is that a motion is permitted any time before the beginning of a trial or hearing. (*Los Angeles County Dept. of Pub. Social Services* v. *Superior Court* (1977) 69 Cal.App.3d 407, 412 [138 Cal.Rptr. 43].) Two express statutory exceptions to this rule are the 10-day-5-day rule and the master calendar rule set forth in Code of Civil Procedure section 170.6, subdivision (2).[2] The

---

[2]Code of Civil Procedure section 170.6, subdivision (2) states:

" . . . . . . . . .

"(2) Any party to or any attorney appearing in any such action or proceeding may establish such prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath that the judge, court commissioner, or referee before whom such action or proceeding is pending or to whom it is assigned is prejudiced against any such party or attorney or the interest of such party or attorney so that such party or attorney cannot or believes that he cannot have a fair and impartial trial or hearing before such judge, court commissioner, or referee. Where the judge, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. . . . In no event shall any judge, court commissioner, or referee entertain such motion if it be made after the drawing of the name of the first juror, or if there be no jury, after the making of an opening statement by counsel for plaintiff, or if there be no such statement, then after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced. If the motion is directed to a hearing (other than the trial of a cause), the motion must be made not later than the commencement of the hearing. In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be. The fact that a judge, court commissioner, or referee has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to the trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion provided for herein at the time and in the manner hereinbefore provided."

10-day-5-day rule provides that "[w]here the judge, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date." (Code Civ. Proc., § 170.6, subd. (2).) The master calendar rule applies to causes assigned from a master calendar and requires in such cases that the challenge be made to the judge supervising the master calendar when the cause is assigned for trial. (See *Zdonek v. Superior Court, supra,* 38 Cal.App.3d at pp. 851-852.)

The *Zdonek* decision construed the master calendar rule as having no application to the assignment of a judge to a matter for all purposes. We disagree with that conclusion. That decision also held that in the latter situation, the applicable rule is the 10-day-5-day rule, and therefore an assigned judge may be disqualified five days before any trial or hearing in the matter, provided he has not yet ruled on any contested issue of fact going to the merits. (The requirement the judge to be challenged not yet having ruled on any contested issue of fact relating to the merits is stated in Code Civ. Proc., § 170.6, subd. (2)); see fn. 2, *ante.*)

No case other than *Zdonek* appears to have considered the timeliness of challenging an all purpose judicial assignment under Code of Civil Procedure section 170.6. That decision found the master calendar exception literally not applicable. The majority opinion in *Zdonek* believed a master calendar assignment is not the same process as an all-purpose assignment. Further, *Zdonek* noted the express statutory language permits challenge to a judge even after he has made preliminary rulings—provided those rulings do not go to the merits or involve contested factual matters. *Zdonek* concluded only the 10-day-5-day rule operates as a limitation on the right to challenge an all-purpose judge.

Dissenting in *Zdonek,* Justice Kingsley noted permitting challenges to all-purpose assigned judges long after their designation and participation in the matter "totally frustrates the purpose of the original assignment," which is to expedite the matter and make continuing use of the judge's accumulating familiarity with the situation as time goes by. (*Zdonek v. Superior Court, supra,* 38 Cal.App.3d at p. 857.) He also noted that normally such assignments are made by stipulation.

It has been said, "The time limitations . . . [of Code Civ. Proc., § 170.6] reflect the Legislature's way of accommodating the conflicting needs of the litigant and the court, where the party wishes to postpone his motion until he is fully informed, and the court requires time to make adjustments after a disqualification." (*People v. Escobedo* (1973) 35 Cal.App.3d 32, 37 [110

Cal.Rptr. 550].) The various time limitations have in common the requirement that the litigant make his challenge as soon as possible after he knows with some reasonable certainty who the actual trial judge will be. Thus, in a master calendar situation, the identity of the judge is known when the matter is assigned for trial, and the challenge is required to be made then. In other situations, where the 10-day-5-day rule applies, the litigant is required to act promptly when he knows the judge's actual identity at least 10 days in advance of the trial or hearing. The litigant is not required to exhaust his one peremptory challenge against a judge who makes early rulings in the matter but may not sit on the actual fact-finding decision; rather, the idea is to permit challenge to the crucial fact finder when his identity is known.

In the case of an all-purpose assignment, that assignment instantly pinpoints and establishes for all purposes the identity of the judge in the matter. The litigant does not need any further information to know who will try the case. There is no policy reason to allow further postponement of the decision whether to challenge. Further, as pointed out by Justice Kingsley in dissent, *supra,* 38 Cal.App.3d at page 857 to allow such postponement frustrates the entire purpose of an all-purpose assignment, to expedite complex matters by permitting one judge to handle the entire matter from start to finish, acquiring an expertise regarding the factual and legal issues involved which will expedite the process.

In *People* v. *Jarvis* (1982) 135 Cal.App.3d 154 [185 Cal.Rptr. 16], the court found untimely a Code of Civil Procedure section 170.6 challenge to the sentencing judge in a criminal matter, after the defendant had made some earlier appearances before that judge regarding scheduling matters but not going to the merits of the sentencing decision. Pointing out such challenges must be made before the commencement of "a hearing," the court said all the postplea matters in that case amounted to one hearing within Code of Civil Procedure section 170.6, since all were directly concerned with or ancillary to the disposition of defendant's criminal case after conviction by guilty plea. Accordingly, the challenge should have been made within five days of the first appearance before the judge. By analogy here, in an all-purpose assignment, all proceedings after the assignment constitute one matter, or "hearing," because they are all part of the protracted decisional resolution of the cause by the particular judge. Such an interpretation of Code of Civil Procedure section 170.6 is consistent with the statutory master calendar exception, because in both situations, the matter is regarded as "belonging to" a particular judge from the point of assignment. From then on, his related decisions in the matter constitute an extended decision-making process, or "hearing," progressively determining the matter. Accordingly, to be consistent with *Jarvis*, and with the master calendar ex-

ception, the all-purpose assignment should also be challenged at the earliest reasonable opportunity, namely, when the judge's identity is known.

We also note aspects of waiver in this situation, where petitioner agreed to the appointment of a judge for all purposes and suggested Judge Levitt. Implicit in such an assignment is the idea that judge will oversee the matter from beginning to end, in the interests of efficiency to benefit all parties. If that judge may be challenged at any time before the actual trial of contested facts on the merits, the agreed-on continuity is breached. In complex cases calling for all-purpose assignments, the law and motion proceedings may be lengthy and complex. Difficult decisions requiring intimate familiarity with the factual allegations may be required, as the declaratory relief judgment here applying complex legal concepts to the parties' factual claims. The reason the parties agreed to use an all-purpose judge is because they believed that judge's acquired familiarity through the law and motion procedures would benefit everyone at the trial. Having agreed to this arrangement, petitioner should not now be heard to challenge the judge. We think the agreement to an all-purpose judge is tantamount to an agreement not to challenge such a judge once he has embarked on his assignment. Accordingly, we conclude a challenge here could only have been made at the time the case was assigned to Judge Levitt for all purposes. That assignment by the presiding judge controlling the master calendar should be seen as one governed by the part of the statute that provides ". . . where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the case is assigned for trial." That is the only interpretation consistent with common sense, which is fundamental to statutory construction. The challenge on August 8, patently motivated by Judge Levitt's ruling against Augustyn on an issue of law, was untimely.

## DISPOSITION

The petition for writ of mandate and for writ of prohibition is denied.

Kremer, P. J., and Work, J., concurred.

Petitioner's application for review by the Supreme Court was denied December 31, 1986. Bird, C. J., and Reynoso, J., were of the opinion that the application should be granted.