[No. B029000. Second Dist., Div. Four. Nov. 20, 1987.]

NEIL WOODMAN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Chaleff & English, Gerald Chaleff, Morinaka, Horikawa, Ono & Yamamoto, Michael Yamamoto, Overland, Berke, Wesley, Gits, Randolph & Levannas, David Wesley, Jaffe & Jaffe, Jay Jaffee, Steiner & Gerstein and Robert S. Gerstein for Petitioners.

No appearance for Respondent.

Ira Reiner, District Attorney, Harry B. Sondheim and Dennis Kucera, Deputy District Attorneys, for Real Party in Interest.

OPINION

**WOODS, P. J.**—In this proceeding in mandate, we are asked to overrule the decision of this division in *Zdonek* v. *Superior Court* (1974) 38 Cal.App.3d 849 [113 Cal.Rptr. 669], which decided when a motion must be made under Code of Civil Procedure section 170.6 to disqualify a judge for prejudice in a case assigned from a master calendar court to a trial department for all purposes. Our decision, by a divided court, was criticized and its holding rejected by the Fourth District in *Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221 [231 Cal.Rptr. 298]. On reflection, we are persuaded that *Zdonek* was wrongly decided, abandon the rule set forth therein, follow *Augustyn,* and grant the relief sought by this petition.

Petitioners Neil Woodman and Stewart Woodman are defendants in a criminal action christened "the black ninja case," a high publicity death penalty case. On July 16, 1986, the case was before Judge Munoz, supervising judge of the criminal departments of the Los Angeles Superior Courts, sitting in Department 100.

It was the policy of Judge Munoz and the superior court to assign such cases out of Department 100 to a named judge for all purposes, including trial. This practice included obtaining an agreement by counsel to the judge to whom the case would be assigned. Ultimately, however, if no agreement was reached, Judge Munoz would simply assign the case. On July 16, Judge Munoz met in camera with both the prosecutor and defense attorneys for the purpose of choosing a judge acceptable to all sides.

The names of two judges were discussed at the July 16 chambers conference. The name of one judge was unacceptable to the defense. The second judge proved unacceptable to the prosecution. The deputy district attorney

handling the case was allowed a recess to confer with his office before making this determination. Finally, Judge Munoz indicated that he would assign the case to Judge Hiroshige.[1]

Although he had no specific recollection of whether the parties had agreed to Judge Hiroshige, Judge Munoz later testified that without such a specific agreement the case would not have been assigned to Judge Hiroshige. The later recollection of the deputy district attorney was that Judge Munoz asked him if the prosecution was going to file a peremptory challenge to Judge Hiroshige. The district attorney replied that he had no authority to do so without seeking the approval of his supervisors. He did not, apparently, ask for time to confer with his office as he had earlier in rejecting the second judge.[2]

The chambers conference was adjourned and the case was called in open court. The defendants were arraigned, pled not guilty to each count charged and denied the special allegations of the complaint. The following colloquy then occurred:

"THE COURT: . . . . I'm going to go ahead and put [this case] in a trial court right now.

"MR. CHALEFF: That's fine.

"THE COURT: The 24th of July, 1986, Department 127, Judge Hiroshige."

On May 14, 1987, nearly one year after the assignment of the case to Judge Hiroshige, the prosecution sought to disqualify Judge Hiroshige under Code of Civil Procedure section 170.6.[3]

---

[1] Contrary to the People's assertions, we believe Judge Munoz's testimony clearly establishes that this action was assigned for all purposes, including trial.

[2] The deputy district attorney filed a declaration in this court as part of the People's return. In that declaration, he specifically denied agreeing to assignment of the case to Judge Hiroshige. He states further that he did not understand the case was being assigned to Judge Hiroshige for all purposes. These representations were not made in the deputy district attorney's declaration filed in the hearing on the motion below. We will not consider them for the first time in this proceeding. The declaration would not be dispositive in any event.

[3] Code of Civil Procedure section 170.6, subdivision (1), provides in pertinent part: "No judge . . . of any superior . . . court . . . shall try any civil or criminal action . . . when it shall be established as hereinafter provided that such judge . . . is prejudiced against any party or attorney or the interest of any party or attorney appearing in such action or proceeding."

Subdivision (2) sets forth the procedure by which a motion may be brought to establish such prejudice, requiring that the motion be "supported by affidavit or declaration under

The defendants challenged the motion as untimely. They argued the motion should have been filed in Department 100 when the case was first assigned to Judge Hiroshige.

On July 17, 1987, the court conducted a hearing on the issue of timeliness at which Judge Munoz testified and the declaration of the deputy district attorney was submitted. At that time, Judge Hiroshige determined that in the absence of an express stipulation before Judge Munoz to accept Judge Hiroshige as the trial judge, the People had not waived their right to the peremptory challenge of him. He also ruled that he could not consider any evidence other that the transcript of the assignment of the case to him on July 16, 1986.

On July 28, 1987, this petition was filed. On August 3, 1987, we issued an alternative writ and stay.

On August 14, 1987, the People wrote this court urging us to discharge the alternative writ and dismiss the petition as untimely filed. The People contended that the time for filing such writ is governed by Code of Civil Procedure section 170.3, subdivision (d), which provides: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision . . . ."

The People pointed out that 11 days had passed between Judge Hiroshige's ruling and the filing of the petition. By order of August 18, 1987, we denied the People's request. They have nonetheless raised the timeliness issue again in their return.

---

penalty of perjury or an oral statement under oath . . ." that the judge is prejudiced or a fair and impartial trial cannot be had before the judge.

Subdivision (2) also sets out the times at which the motion must be made. "Where the judge . . . assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial."

Subdivision (2) also provides: "In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be."

The remaining subdivisions of the section involve procedural matters not at issue in this proceeding. Throughout this opinion, we refer to the motion set forth by Code of Civil Procedure section 170.6 as a peremptory challenge, as distinguished from a challenge to a judge for cause, the procedure for which is set out in Code of Civil Procedure sections 170 to 170.5.

## I

■ Preliminarily, we have elected to reconsider the People's argument that, under the time limitations set forth in section 170.3, subdivision (d), the instant petition was untimely. Petitioners' response to this argument is that section 170.3, subdivision (d) applies only to challenges for cause set forth in sections 170.1 to 170.5.

The People support their contention with these arguments: (A) They read the phrase "disqualification of a judge" as used in section 170.3, subdivision (d) broadly, without distinguishing between disqualification by challenge for cause and disqualification by peremptory challenge. (B) They cite language appearing in the peremptory challenge provision, which provides that it shall not "affect or limit" the challenge for cause provisions but be "construed as cumulative thereto" (§ 170.6, subd. (7)), as evincing a legislative intent to apply the time limitations for taking a writ for cause to the peremptory section. (C) They cite a Third District opinion which, they say, "reached the conclusion that the time limits of [*sic*] sec. 170.3, subd. (d) are applicable in seeking writ relief from a court's failure to comply with Code of Civil Procedure sec. 170.6."

### A

While the People are correct that the term "disqualification" is a generic when used in relation to the removal of a judge either for cause or by peremptory challenge, it does not follow that the two procedures are identical. On the contrary, a challenge for cause is a "separate and distinct right" from the peremptory challenge described in section 170.6. (*Pacific etc. Conference of United Methodist Church* v. *Superior Court* (1978) 82 Cal.App.3d 72, 80 [147 Cal.Rptr. 44].) Accordingly, the mere use of the phrase "disqualification of a judge" in the time limitation provision of section 170.3, subdivision (d) does not evince a legislative intent that that limitation apply to all disqualification motions.

Construing the statute as a whole, as we must (*San Francisco Fire Fighters* v. *Civil Service Com.* (1987) 191 Cal.App.3d 919, 923 [236 Cal.Rptr. 713] [words in a statute "must be construed in context . . . ."]), it is significant that section 170.3 sets forth an elaborate procedure for the judicial determination of the propriety of a challenge for cause which is not applicable to the peremptory challenge. As petitioners point out, but for a single minor exception, nothing in the statutory provisions dealing with challenges for cause expressly references section 170.6.

Moreover, we have independently examined the legislative history of section 170.3, subdivision (d) which makes it abundantly clear that the 1984

revision of the challenge for cause statute, of which this section is part, was to have no effect on the peremptory challenge statute. The Senate Final History of Senate Bill No. 1633, which amended the statute, specifically notes: "Code of Civil Procedure Sec. 170.6 provides for the peremptory challenge of a trial court judge. *This bill would not amend that section.*" The same conclusion was reached in the analysis of the bill provided to the Assembly Committee on the Judiciary. Finally, the chairman of the State Bar subcommittee, which was the driving force behind revision of the challenge for cause statute, wrote in a supporting memorandum: "No revision is suggested to the present so-called 'preemptory' [*sic*] challenge of trial judges. (C.C.P. § 170.6.)" Legislative history can shed significant light on legislative intent for the purpose of construing a statute. (*Lewis* v. *Ryan* (1976) 64 Cal.App.3d 330, 333-334 [134 Cal.Rptr. 355].)

## B

■ The sole reference in section 170.6 to the provisions dealing with challenges for cause appears in subdivision (7) which states, in part: "Nothing in this section shall affect or limit the provisions of Section 170 . . . , of this code and this section shall be construed as cumulative thereto." Seizing upon the word "cumulative" the People argue, in effect, that this incorporates the time limitations of section 170.3, subdivision (d). ■ "Cumulative" is not, however, synonymous with incorporation. " ' "Cumulative," as defined by the legal lexicographers, means "additional; that which is superadded to another thing of the same character and not substituted for it." ' ' [Citations.]" (*Verry* v. *Eckel* (1943) 61 Cal.App.2d 595, 599 [143 P.2d 394], quoting *Mannington* v. *Hocking Valley Ry. Co.,* 183 F. 133.) ■ Moreover, with specific reference to remedies, " '[a] cumulative remedy is one created by statute in addition to one which still remains in force.' " (*People* v. *Santa Fe Federal S. & L. Assn.* (1946) 28 Cal.2d 675, 683 [171 P.2d 713], quoting Bouvier's Law Dict.) ■ Clearly, therefore, the only purpose of the use of the word "cumulative" in section 170.6, subdivision (7), is to emphasize that challenges for cause and peremptory challenges are separate rights rather than in derogation of one another.

As we have noted, section 170.6 is a remedial statute in that it provides a procedure by which a litigant may peremptorily disqualify a judge whom the litigant believes to be biased against him. ■ Remedial statutes are to be liberally construed and "the modern trend of decisions [is] in favor of granting relief unless absolutely forbidden by statute [citations]." (*Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 538 [148 Cal.Rptr. 729].) ■ Appellate review of the ruling on a peremptory challenge is part of the remedy. Were we to interpret "cumulative" as incorporating the restrictive time limitation for seeking a writ set forth in

section 170.3, subdivision (d), we would run afoul of the rule of liberal interpretation. Certainly, this is true in absence of a clear signal from the Legislature that this was their intention.

### C

■ Finally, the People argue that *Stebbins* v. *White* (1987) 190 Cal.App.3d 769, 784, footnote 9 [235 Cal.Rptr. 656], decided by the Third District, has held that the time limitations of section 170.3, subdivision (d), apply to section 170.6. This is not our reading of the case. *Stebbins,* like the case upon which it relies, *People* v. *Nathan* (Cal.App. Mar. 12, 1987) C000007 (nonpub. opn.), does not concern itself with the timeliness of a writ petition. In deciding other issues, those opinions merely assume without discussion or analysis that section 170.3, subdivision (d) applies to section 170.6. We think this language is dicta and decline to be persuaded by it.

We conclude that the time limitation set forth in Code of Civil Procedure section 170.3, subdivision (d) is not applicable to Code of Civil Procedure section 170.6 and that the writ petition herein was timely filed.

### II

■ Next we consider whether the trial court improperly excluded evidentiary material in ruling upon the timeliness of the peremptory challenge. ■ There is no dispute as to the court's jurisdiction to rule on whether such a challenge is timely. (*Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 830, fn. 13 [209 Cal.Rptr. 844].) To the extent that the determination of timeliness involves questions of fact, a hearing is appropriate. (See *In re Jose S.* (1978) 78 Cal.App.3d 619, 629 [144 Cal.Rptr. 309] [reversible error for trial court to have made no record of hearing, if any, on Code Civ. Proc., § 170.6 motion].)

■ The question that arises is what evidence can be adduced at the hearing. The court below felt it could not consider anything other than the original record of the assignment of the case. It, therefore, refused to consider the testimony of Judge Munoz and the declaration of the deputy district attorney. The trial court also sustained the People's objection to the admissibility of the testimony of Judge Munoz regarding his court policies on assignment of cases from Department 100, as opposed to his specific recollections of the circumstances surrounding his assignment of this case. Both rulings were error.

It is obvious that evidence of the superior court's policy regarding the assignment of cases from a master calendar court is relevant to the question

of timeliness of a challenge. In *Villarruel* v. *Superior Court* (1973) 35 Cal.App.3d 559, 561 [110 Cal.Rptr. 861], the appellate court itself considered the declaration of the then-supervising judge of the East District of the Los Angeles Superior Court regarding his assignment policies in deciding whether a peremptory challenge was timely. No reason exists to deny the superior court the same kind of relevant evidence. It was error for the trial court to decline to consider the testimony of Judge Munoz and declaration of the deputy district attorney.

We also reject the People's contention that evidence of assignment policy is inadmissible, as it is equally relevant.

### III

The central issue in this proceeding is, at what point must a challenge under Code of Civil Procedure section 170.6 be made when a case is assigned from a master calendar court to a trial court for all purposes, including trial. Under Code of Civil Procedure section 170.6, if the identity of the judge before whom an action is to be tried is known at least 10 days before the trial date, the motion must be made at least 5 days before that date (the 10-day-5-day rule). Alternatively, if there is a master calendar, the motion must be made not later than the time the cause is assigned for trial from the master calendar (the master calendar rule). (Code Civ. Proc., § 170.6; 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, §§ 119, 121, pp. 141-142, 143.) Simply stated, the question is which of these rules applies to the all-purpose assignment.

In *Zdonek* v. *Superior Court, supra,* 38 Cal.App.3d 849, a majority of this court rejected application of the master calendar rule to a peremptory challenge brought in an action which had been assigned from a master calendar court "for all purposes." The majority held that "[a]lthough the assignment to Judge Jefferson was made by the judge presiding in the master calendar department, the assignment was not from a master calendar, as that term is used in section 170.6 and in the California Rules of Court [citations]. The applicable rule, therefore, is the 10-day-5-day rule . . . ." (*Id.* at p. 852.)

The distinction drawn by the majority between the master calendar department and the master calendar was based on two earlier cases (*Villarruel* v. *Superior Court, supra,* 35 Cal.App.3d 559; and *People* v. *Escobedo* (1973) 35 Cal.App.3d 32 [110 Cal.Rptr. 550]). Relying on these cases, the majority in *Zdonek* concluded that the master calendar rule applied only to ready cases which were sent out from the master calendar for immediate trial.

Upon determining that an all-purpose assignment did not fit this description, the majority applied the 10-day-5-day rule.

The majority opinion in *Zdonek* is, however, vulnerable on two fronts. First, *Villarruel* and *Escobedo,* the two cases relied upon, did not involve all-purpose assignments, and secondly, the *Zdonek* majority failed to consider the special characteristics of the all-purpose assignments.

Turning first to the majority's reliance on *Villarruel* and *Escobedo. Villarruel* v. *Superior Court, supra,* 35 Cal.App.3d 559, involved a criminal action transferred from the master calendar department to another department for trial though not trial forthwith. In applying the 10-day-5-day rule, rather than the master calendar rule, the court observed: "Where a case is assigned in advance to a trial department (as was done here) the litigant will not know with certainty what judge will be sitting in that department on the appointed day [for trial]. . . . Thus, a litigant normally will want to delay his motion either because of doubt as to what judge may be sitting in the assigned department on the scheduled date, or because he may later learn something about the judge which will affect his opinion as to whether the motion should be made. [Citation.]" (*Id.* at p. 562.)

The court then discussed the purpose of the master calendar rule with reference to then-existing rule 223 of the California Rules of Court. Under that rule "[t]he characteristics of such a master calendar are that it is 'composed of all cases set for trial on that day' and that 'the cases thereon ready for trial shall be transferred to any department of the court that is available.' When a ready case is assigned to a ready department it would be impracticable to allow the litigant five days to consider the advisability of a disqualification motion, with the trial department ready and able to commence the trial forthwith." (*Id.* at p. 562.) The court concluded that an assignment of a case from the master calendar court to a department for future trial was not the equivalent of an assignment from the master calendar. Therefore, "[w]hen the case is assigned for a future trial, the reasons for the special 'master calendar' provision in section 170.6 do not exist." (*Id.* at pp. 563-564.)

Similarly, *People* v. *Escobedo, supra,* 35 Cal.App.3d 32, also involved a criminal matter assigned from the master calendar court to a trial department for future trial. The court again noted: "Cases are commonly assigned to departments of the superior court, and not to judges, but such an assignment is ordinarily regarded as notice that the judge then regularly sitting in the named department will hear the matter. [Citation.] But even though a judge is assigned to a department 'permanently' or for a fixed period, the litigant cannot be certain that a change will not occur with little or no

notice due to illness, vacation or a reassignment of the judge by the presiding judge of the court." (*Id.* at p. 37.) As in *Villarruel,* the court concluded that an assignment from a master calendar court, as distinct from the master calendar, which was for future trial triggered application of the 5-day-10-day rule rather than the master calendar rule. (*Id.* at pp. 39-40.)

By relying on these earlier decisions the majority in *Zdonek* made no distinction between actions assigned to trial departments for future trials and those actions assigned to specific judges for all purposes including trial. Indeed, the majority dismissed the distinction as unsupported by the statute. (*Zdonek* v. *Superior Court, supra,* 38 Cal.App.3d at p. 853, fn. 2.)[4]

In his dissent Justice Kingsley found this distinction crucial. He noted: "The reason for an 'all purpose' assignment lies in the pragmatic value of having all matters arising in a complicated and potentially long drawn-out case to be heard by one judge, so that the time of litigants, counsel and the superior court need not be wasted in the repetitive education of successive judges in the intricacies of that kind of case. The situation, thus, differs from that involved in the cases relied on by the majority, where the assignment was to a *department* of the court and not to a particular judge by name. While the departmental assignment may have been made on the *assumption* that one judge would continue to control the case, that was neither the legal nor the practical effect of those assignments. Many circumstances might result in a transfer of the original judge to another department, or the temporary assignment of a different judge to the designated department. The assigned case would, absent some new assignment, remain in the designated department, regardless of the judge sitting on any particular day. Not so with the 'all purpose' assignments. The instant case was assigned to Judge Jefferson by name, it traveled with him into any department to which he might thereafter be assigned or re-assigned. To permit a challenge under section 170.6 after the parties have held hearings before the designated judge, and more than a year after all parties and counsel knew that he was to hear every motion and to preside at the trial, totally frustrates the purpose of the original assignment." (*Id.* at pp. 856-857.) Thus, the dissent in *Zdonek* recognized that an all purpose assignment is of a different species than either an action assigned for future trial or one assigned for immediate trial.[5]

---

[4] Similarly, the People assert that since the statute makes no mention of "all purpose" assignments, the master calendar rule should not apply to them. This ipse dixit assertion begs the question since, plainly, some time limitation must apply to such cases whether or not they are specifically denominated in the statute. Moreover, the statute states that where a case or proceeding has not been specifically provided for "the procedure herein specified shall be followed as nearly as may be." (§ 170.6, subd. (2).) This language quite clearly anticipates judicial interpretation of the statute.

[5] It was the view of the dissenter in *Zdonek* that the statutory language in section 170.6, subdivision (3) applicable to all-purpose assignments was neither the master calendar rule

The Fourth District in *Augustyn* v. *Superior Court, supra,* 186 Cal.App.3d 1221, rejected the majority opinion in *Zdonek.* Reviewing the time limitations set forth in Code of Civil Procedure section 170.6, the *Augustyn* court concluded that they had in common "the requirement that the litigant make his challenge as soon as possible after he knows with some reasonable certainty who the actual trial judge will be. . . . The litigant is not required to exhaust his one peremptory challenge against a judge who makes early rulings in the matter but may not sit on the actual fact-finding decision; rather, the idea is to permit challenge to the crucial fact finder when his identity is known. [¶] In the case of an all purpose assignment, that assignment instantly pinpoints and establishes for all purposes the identity of the judge in the matter. The litigant does not need any further information to know who will try the case. There is no policy reason to allow further postponement of the decision whether to challenge." (*Id.* at p. 1228.)

The *Augustyn* court characterized the all-purpose assignment as a single proceeding "because [proceedings after the assignment] are all part of the protracted decisional resolution of the cause by the particular judge. . . . From then on, [the judge's] related decisions in the matter constitute an extended decision-making process, or 'hearing,' progressively determining the matter." (*Ibid.*) Therefore, *Augustyn* concluded the point at which the decisionmaker's identity becomes known is the triggering event for the purpose of a timely peremptory challenge. In the all-purpose assignment, this occurs in the master calendar court, requiring application of the master calendar rule.

We find persuasive the interpretation of Code of Civil Procedure section 170.6 set forth in *Augustyn* in light of the nature and purpose of the all-purpose assignment.

■ The People argue that both the dissenting opinion in *Zdonek* and the opinion in *Augustyn* rely upon the fact that in each case there was apparently a stipulation to the all-purpose judge. In the instant case, the People argue, no such stipulation existed as to Judge Hiroshige and, therefore, neither opinion applies. Judge Hiroshige also believed that a stipulation to him was necessary before the master calendar rule could be applied to the People's challenge. We disagree.

nor the 10-day-5-day rule but the language in section 170.6, subdivision (2) providing that "[i]n the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be." (*Zdonek* v. *Superior Court, supra,* 38 Cal.App.3d at p. 857.) Accordingly, the dissent would have permitted the peremptory challenge up to five days before the commencement of a proceeding in the case, not only the commencement of trial. (*Ibid.*) We do not adopt this view.

As we read the opinions, the stipulations were peripheral to the analysis through which the dissenter in *Zdonek* and the court in *Augustyn* reached their conclusions and in any event our analysis leads us to the conclusion that the master calendar rule applies in the all-purpose assignment situation whether or not a stipulation has occurred. While we regard as commendable the efforts of master calendar judges to obtain an agreement to a single judge in complex cases, this is not a matter of right. Section 170.6 does not entitle litigants to choose the judge before whom they wish to appear but only to disqualify a judge whom they believe to be biased against them.

In connection with this argument the People also allege that the assignment of an action for all purposes without a stipulation raises an appearance of impropriety. The People evidently feel that master calendar judges may have secret agendas determining their assignments of such cases. There is nothing before us to justify this suspicion and we reject it as illusory.

 Next the People argue that the policy of the district attorney's office requiring a deputy district attorney to seek permission of his supervisors before filing a peremptory challenge would be compromised by application of the master calendar rule to all-purpose assignments. This is a frail argument in view of the record in this case which shows a protracted discussion in camera of various judges to whom the master calendar court sought to assign the action. That conference included at least one recess to permit the deputy district attorney to consult with his office before agreeing to one of the judges mentioned. This does not appear in any way to compromise the district attorney's office.

We find meritless the People's contention that deputy district attorneys will be forced to decide whether to exercise a peremptory challenge or file affidavits of prejudice without adequate information about the judge to whom they are assigned. This situation equates with cases assigned by a master calendar court for trial forthwith. Yet, the Legislature has chosen to require litigants in that situation to make an immediate choice as to the filing of peremptory challenges. We see no reason why prosecutors should be able to make decisions in those cases but not where there is an all-purpose assignment.

The People also advance the policy argument that the rule we adopt today will plunge us into uncertainty because a standard definition of a criminal master calendar court no longer exists with the repeal of rule 248 of the California Rules of Court which previously supplied such definition

for the San Francisco and Los Angeles Superior Courts. This overlooks the fact that, as in the Los Angeles Superior Court, for instance, local rules can denominate and describe such courts. (L.A. Super. Ct. Rules, rules 100, 301, 302, 304, 305.) We are not persuaded that these local rules cannot fill whatever definitional void was created by the repeal of rule 248 of the California Rules of Court. Moreover, our focus is not necessarily on the nature of the court from which a case is assigned, but, rather, the nature of the assignment.

In connection with this argument, the People also contend that local rules should not subvert the purpose of Code of Civil Procedure section 170.6. This argument assumes that the local rules governing the definition and function of a criminal master calendar court are in conflict with the use of the term master calendar in the statute. We perceive no such conflict.

The final argument advanced against the application of the master calendar rule to all purpose criminal assignments is that a criminal defendant could force transfer of an all purpose matter by waiting until the court was engaged in another proceeding and refusing to waive time. This issue is not before us and is not relevant to the timeliness of a peremptory challenge.

The People's contention that the master calendar rule should apply only to those actions set on the master calendar and assigned for immediate trial, overlooks the nature and purpose of the all-purpose assignment. The People erroneously equate the all-purpose assignment with the assignment of an action for future trial. An all-purpose assignment clearly contemplates assignment to a specific judge to process the litigation in its totality rather than a trial department in which the identity of the judge is subject to the vagaries of personal and administrative necessity. The purpose of such assignment is to permit the efficient disposition of complex matters and this commendable purpose would be utterly frustrated unless there is certainty that once assigned, the all-purpose judge will preside over the action from beginning to end. ▪ The purpose of the disqualification statute is, after all, to promote fair and impartial trials, not to serve as a device by which one party or the other can inordinately delay or otherwise frustrate the judicial proceedings. (*Garcia* v. *Superior Court* (1984) 156 Cal.App.3d 670, 677 [203 Cal.Rptr. 290].)

▪ Accordingly, we conclude that the master calendar rule is applicable here and the order of the court below must be vacated and reversed.

Let a peremptory writ of mandate issue directing respondent court to vacate its order of July 17, 1987, granting the People's motion under Code of Civil Procedure section 170.6 and make a new and different order denying the motion.

Kingsley, J., and McClosky, J., concurred.

A petition for a rehearing was denied December 18, 1987, and the petition of real party in interest for review by the Supreme Court was denied January 14, 1988.