[No. H004003. Sixth Dist. July 11, 1988.]

THE MUNICIPAL COURT FOR THE MONTEREY COUNTY JUDICIAL DISTRICT OF MONTEREY COUNTY, Petitioner, v. THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent; THEODORE H. SWENSON et al., Real Parties in Interest.

COUNSEL

Ralph R. Kuchler, County Counsel, and Albert Maldonado, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Michael W. Bartram, District Attorney, Ann C. Hill, Deputy District Attorney, and Theodore H. Swenson, in pro. per., for Real Parties in Interest.

OPINION

AGLIANO, P. J.—The Municipal Court of Monterey County in its own name seeks a writ of mandate directed to the superior court. The People and Theodore H. Swenson, parties to a misdemeanor prosecution below, are the real parties in interest. The municipal court requests: (1) that we issue a peremptory writ of mandate commanding the superior court to order that the People's peremptory challenge to the trial judge was untimely filed; (2) that we declare that the decision in *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407 [241 Cal.Rptr. 818], governs the timeliness of peremptory challenges under the assignment system of the Monterey County Municipal Court.

We summarily denied the petition for writ of mandate, and the Supreme Court retransferred the matter with directions to issue an alternative writ,

which we did. We will deny the petition for writ of mandate because the municipal court lacks standing to seek a writ of mandate against the superior court.

## RECORD

The Municipal Court of Monterey County operates an assignment system whereby each misdemeanor case is alphabetically assigned to a department which hears all matters in that case, including pretrial motions and the trial itself. The court describes its system as a direct calendar system.

In the underlying matter, involving charges of violation of marriage license requirements (Pen. Code, § 360) filed against real party Theodore H. Swenson, the case was assigned to a department in which Judge Raymond H. Simmons was then presiding.

Swenson appeared before Judge Simmons for arraignment on August 6, 1987. On September 3, 1987, the district attorney made an appearance before Judge Simmons in the matter.

On September 24, 1987, Judge Simmons denied a motion to recuse the district attorney.

On November 25, 1987, after denial of his motion to dismiss, defendant waived his right to a jury trial and agreed to a court trial before Judge Simmons.

On December 3, 1987, the People filed an affidavit of prejudice under Code of Civil Procedure section 170.6 against Judge Simmons. The judge found the motion timely, allegedly under compulsion of a previous order by the presiding judge of the Monterey County Superior Court interpreting the method of assignment of cases in the Monterey County Municipal Court as being something other than an all-purpose assignment. However, Judge Simmons expressed disagreement with this ruling believing the method of assignment is identical to the all-purpose assignment discussed in the decisions in *Woodman* v. *Superior Court, supra,* 196 Cal.App.3d 407, and *Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221 [231 Cal.Rptr. 298].

Swenson petitioned the superior court for a writ of mandate compelling the municipal court to deny the People's challenge to Judge Simmons. That court denied the petition. The superior court judge found as a fact that the assignment system of the municipal court is not an all-purpose assignment system as in *Woodman* and *Augustyn* but is a direct calendar system where in actual practice there is no certainty on a given date that the judge

assigned to that department will actually be present. Swenson did not pursue the matter further. The municipal court, instead, took up the cause.

■ The issues are (1) does the municipal court under these circumstances have standing to petition in its own name for a writ of mandate either (a) compelling the superior court to reverse a ruling which in actual effect affirmed the municipal court's decision (to honor the challenge to Judge Simmons), or (b) directing the superior court to adopt a certain rule concerning Code of Civil Procedure section 170.6 challenges in the municipal court (which prayer essentially seeks declaratory relief rather than a coercive order on behalf of an individual petitioner), and (2) if there is standing to request such relief, then what is the appropriate time to file a peremptory challenge under Code of Civil Procedure section 170.6 in the Monterey County Municipal Court? Because we have concluded the municipal court lacks standing to bring this petition, we need not reach the second issue and express no opinion on it.

## STANDING

In our common law judicial system we rely upon a separation of roles to bring about proper results. The courts' role is to decide cases; the parties' role is to bring cases before the courts. If a party is aggrieved by the ruling of a lower court, he is provided an avenue of appeal to a higher tribunal by means of an orderly prescribed procedure, and that appellate tribunal may, within limits, alter the lower court's ruling. The system does not provide a procedure for a lower court on its own impetus to ask a higher court to address general administrative or procedural problems within the system. More germane to this case, there is no procedure authorized whereby a municipal court, disagreeing with a superior court's decision on review, may come to the next court in the hierarchy, the court of appeal, and ask it to set the superior court straight. A municipal court may have reason to complain of the treatment of one of its decisions, or its procedures, at the hands of the reviewing court. Nevertheless, the premise under which the judiciary operates is straightforward: if no individual party finds it worth his or her while to champion the cause and seek judicial review, then review will not occur.

One reason the system is designed in this way is undoubtedly that lawsuits cost the public time and money; the public pays for the courts. Judicial time is a scarce resource and priorities for its use are essential. Many cases pend before the courts for decision, in which the parties found it to their advantage to spend their own time and money to prepare and present those matters. These cases are the primary business of courts and take absolute precedence over disputes which have not yet found a plaintiff outside the

system. A lower court, we repeat, may have entirely legitimate and rational reasons to disagree with a higher court's ruling; but until some member of the public finds it worthwhile to bring that matter before the system, the dispute is not cognizable.

Perhaps because the foregoing analysis is so basic to the design of our judicial system, the case of a court suing another court is a rare event. Our research has disclosed but two decisions. The first says such a lawsuit may not be brought; the second allows it in passing, without consideration of the issue.

The first of these cases holds that a municipal court lacks standing under Code of Civil Procedure section 1086 to seek a writ of mandate in its own name, because it has no "beneficial interest" in the matter, within the statutory language. (*Municipal Court* v. *Superior Court* (1988) 199 Cal.App.3d 19, 24-25 [244 Cal.Rptr. 591].) In that matter, the municipal court's use of a waiver form in drunk driving cases was in issue. The court held that the lower court "may not challenge [the superior court's] ruling by its own action in a higher court merely because one result of the ruling requires the lower court to change a waiver form." (*Id.* at p. 25.) That same reasoning also applies here; the municipal court has no greater beneficial interest in the procedures employed for peremptory challenges to judges. (See also *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 189-190 [137 Cal.Rptr. 460, 561 P.2d 1148] [the role of the respondent court in a mandamus proceeding is that of a neutral party with no beneficial interest in the outcome].)

The second of the decisions in point is one where a lower court was permitted to sue a higher court, in that case, to vacate a writ of supersedeas issued by the District Court of Appeal against the superior court regarding an adoption matter before the latter. (See *Superior Court* v. *Dist. Court of Appeal* (1966) 65 Cal.2d 293 [54 Cal.Rptr. 119, 419 P.2d 183].) That decision did not discuss the question of standing. It was apparent that although brought in the name of the superior court, the suit was clearly between interested parties, the named real parties in interest, prospective adoptive parents, and the county bureau of adoption. The decision did not present the situation here where a lower tribunal sues a higher tribunal to prevent the latter from controlling the former's procedures.

In general, California courts have no power in mandamus or otherwise to render advisory opinions or give declaratory relief. (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126]; accord, *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 798 [166 Cal.Rptr. 844, 614 P.2d 276].)

Another decision holds that a tribunal, board, or officer exercising judicial functions may not litigate as a party the question whether it has, in the doing of an official act, exceeded its jurisdiction. (*Matter of De Lucca* (1905) 146 Cal. 110, 113 [79 P. 853].) The *De Lucca* court said the law has provided methods for the actual aggrieved party to challenge judicial action, by appeal or by writ, and further pointed out that in a writ proceeding the actual interested party is not the court whose act is reviewed.

The collective reasoning underlying these decisions, and the design of the judicial system which they reflect, are loosely referred to as standing requirements. In general, "One who invokes the judicial process does not have 'standing' if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (3 Witkin, Cal. Procedure (3d ed 1985) Actions, § 44, p. 71.) These rules exist both to preserve the court's resources and to insure that issues are presented by those with strong interests in vigorous advocacy of the issues.

An important factor against allowing a lower court to sue a higher court is the inevitable erosion of the working relationship between the institutions. By analogy, the seminal case of *Carsten* v. *Psychology Examining Com.*, *supra*, 27 Cal.3d 793, is instructive. In *Carsten* the court held that a member of an administrative agency may not bring an action in mandate to challenge the legality of action taken by the board on which he or she serves as a member, for the reason that such a party lacks a beneficial interest in the outcome (required by Code Civ. Proc. § 1086 controlling actions for writs of mandate) and further that the pursuit of litigation for such purpose "will be disruptive to the administrative process and antithetical to its underlying purpose of providing expeditious disposition of problems in a specialized field without recourse to the judiciary. Board members will be compelled to testify against each other, to attack members with conflicting views and justify their own positions taken in administrative hearings, and to reveal internal discussions and deliberations. Litigation—even the threat of litigation—is certain to affect the working relationship among board members." (27 Cal.3d at p. 799.)

Although because of the "case or controversy" requirement of the federal constitution, federal courts have been particularly strict in applying standing requirements, California courts also require a plaintiff to have a personal interest in the outcome of litigation; the courts have no power to issue advisory opinions. (*Stocks* v. *City of Irvine* (1981) 114 Cal.App.3d 520, 528, 531 [170 Cal.Rptr. 724].) That decision observed that the requirement of

standing, in the sense of beneficial interest in the outcome, is as old as *Marbury* v. *Madison*: "The province of the court is, solely, to decide on the rights of individuals, . . ." (*Marbury* v. *Madison* (1803) 5 U.S. (1 Cranch) 137, 170, quoted in *Stocks, supra,* at p. 530.)

The requirement of standing has been fully discussed in several opinions written by Judge Posner of the Seventh Circuit Court of Appeals. (E.g., *People Organ. for Welfare & Emp. Rights* v. *Thompson* (7th Cir. 1984) 727 F.2d 167; *D'Amico* v. *Schweiker* (7th Cir. 1983) 698 F.2d 903.) "The requirement of what we have called personal injury 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action. . . .' " (*People Organ. for Welfare & Emp. Rights, supra,* at p. 173, quoting in part from *Valley Forge College* v. *Americans United* (1982) 454 U.S. 464, 472-473 [70 L.Ed.2d 700, 709, 102 S.Ct. 752].) In the *D'Amico case,* the court found that administrative law judges in the Social Security Administration lacked standing to bring a lawsuit in the federal district court challenging an administrative ruling of the administration regarding payment of disability benefits. (The challenged instruction concerned " 'retroactive cessation' " of benefits.) Judge Posner said the judges lacked a sufficient beneficial interest in the matter to have standing to sue; the ruling did not affect their pay, benefits, or job conditions, nor did it significantly impair their judicial discretion. Although recognizing that "[d]iscretion is power, a commodity that judges, like other people, prize," and that "[a] reduction in discretion is a reduction in an important though nonpecuniary form of compensation for a judge," Judge Posner nevertheless concluded that the judges' interest in their personal power was outweighed by the collective importance of the policies underlying the standing doctrine, which include damage to the appearance of impartiality in the system when the judges by suing become identified with one side or another of a controversy they may be required to adjudicate. (*Id.* at pp. 905-906) "Although these administrative law judges have a big emotional stake in this case and have invested heavily of their time and money in its vigorous prosecution, they are the wrong people to be raising with us the question whether the challenged instruction is lawful. . . . [¶] . . . Their proper course is to obey the instruction and let any claimant injured by it ask the courts to set it aside." (*Id.* at p. 906.)

The conclusion that a municipal court lacks "beneficial interest" to sue does not mean that a municipal court has no actual interest in the outcome of proceedings before it. Clearly here, the municipal court has a legitimate stake in limiting the exercise of peremptory disqualifications. Nevertheless, the policy preventing a lower court from suing a higher court has greater precedence, for the sake of the proper and harmonious functioning of the

system. The term "beneficial interest" is in this context a shorthand reference to these policy considerations of judicial administration.

Moreover, it is difficult to describe any appropriate relief which we might grant the municipal court on this petition. If we were to reverse the superior court's ruling, we would be reversing the municipal court's own ruling as well, since the superior court essentially affirmed the municipal court order which granted the peremptory challenge (by denying Swenson's petition for extraordinary review of that ruling). On the other hand, if we were to direct the superior court to adopt a general principle of review to the effect that the rule of *Woodman, supra,* always applies to assignments in the Monterey County Municipal Court, we would clearly be exceeding our powers of review of the superior court and be improperly controlling its appellate review discretion in advance, rather than reviewing its individual decisions. Further, even if we were so inclined to usurp power, we could not readily formulate such a general rule of review; the application of the *Woodman* decision is not a cut and dried affair. *Woodman* holds that an all-purpose judicial assignment may not be challenged after the parties are aware of the assignment, but does not further define application of that principle to the varying conceivable kinds of judicial-assignment methods. (*Woodman* v. *Superior Court, supra,* 196 Cal.App.3d 407.)

We cannot grant the kind of relief the municipal court seeks, namely, the imposition upon the superior court of some absolute principle which will govern all peremptory challenges in the municipal court system. The difficulty of even describing the kind of relief which the municipal court seeks by its petition for mandate shows plainly the wisdom of denying standing in this situation. In our common law judicial system, unlike a civil law system, individual precedents rather than general laws are the life of the law; and issues such as those posed here should properly be raised by interested parties on an individual basis. These principles compel the conclusion that the municipal court here lacks standing to seek a writ of mandate against the superior court.

## DISPOSITION

The petition for a writ of mandate is denied.

Brauer, J., and Capaccioli, J., concurred.

Petitioner's application for review by the Supreme Court was denied September 22, 1988.