[No. B037991. Second Dist., Div. Three. Jan. 20, 1989.]

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 12 et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; HERZOG CONTRACTING CORPORATION et al., Real Parties in Interest.

**COUNSEL**

Reich, Adell & Crost, Julius Reich, Alexander B. Cvitan and Adam Radinsky for Petitioners.

No appearance for Respondent.

Manatt, Phelps, Rothenberg & Phillips, George David Kieffer, Philip R. Recht and Diane L. Faber for Real Parties in Intertest.

**OPINION**

**CROSKEY, J.**—Petitioners, International Union of Operating Engineers Local 12 (Union) and David Lanham (Lanham; hereinafter collectively defendants) seek a writ of prohibition restraining the trial judge, Edward Y. Kakita, from (1) hearing a pending motion for preliminary injunction and (2) presiding over any other proceedings in this action. The real parties in interest, Herzog Contracting Corporation (Herzog), Al Landes (Landes) and Steve Sutter (Sutter; hereinafter collectively plaintiffs) are the plaintiffs in this action in which they seek damages and declaratory and injunctive relief. They oppose the petition.

Defendants attack the trial court's rejection of their assertion of a challenge to Judge Kakita under Code of Civil Procedure section 170.6 (section 170.6) as untimely even though it was made within the 10-day period permitted by the court's local trial court delay reduction rules. The novel question with which we are presented is whether such local rules control the timing of judicial challenges over the provisions of section 170.6, as construed by recent appellate decisions. We conclude that they do and that defendants had 10 days in which to assert a section 170.6 challenge. We further conclude that such right was not lost by participation during said 10-day period in an ex parte hearing to oppose an application for a temporary restraining order. We therefore issue the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

The defendant Union represents certain employees in the construction industry and the defendant Lanham is its business agent. The plaintiff Herzog is a construction contractor for the Long Beach-Los Angeles Rail Transit Project (RTP) and the plaintiffs Landes and Sutter are two of its employees. On October 7, 1988, plaintiffs filed this action against

defendants seeking both damages and declaratory and injunctive relief. Plaintiffs alleged, inter alia, that Lanham had unlawfully and repeatedly entered the RTP job site and interfered with Herzog's employees and their work activities with the intent and purpose of causing Herzog, a nonunion contractor, to lose its contract and be barred from further state work. The record reflects that on September 15, 1988, after a job site incident for which police assistance had been required, Herzog wrote to defendants and informed them that a complaint seeking injunctive relief would be sought if Lanham did not immediately cease further visits to the RTP job site.

Shortly before noon on October 6, 1988, counsel for plaintiffs informed defendants' counsel by telephone that plaintiffs would, on the next day, apply for a temporary restraining order (TRO) to enjoin defendants' interference at the RTP job site. At the time the case was filed on October 7, 1988, in the Central District of the Los Angeles Superior Court, it was given an odd file number. This caused it to be immediately assigned to a particular judge in that court's statutory delay reduction pilot project (project) which had been established in 1987 in accordance with the mandate of the Trial Court Delay Reduction Act of 1986 (Gov. Code, §§ 68600-68619; hereinafter the Act).

The project was implemented by the Trial Court Delay Reduction Rules (Ch. 11, Local Rules of the Los Angeles County Superior Court hereinafter the Local Rules) which had been adopted by a majority of the Superior Court judges in accordance with Government Code section 68612. The Local Rules went into effect on October 15, 1987.[1]

Upon filing, this case was assigned to Judge Kakita and it was to him that plaintiffs' application for a TRO was sent for hearing. Counsel for defendants, alerted by telephone the previous day as to the anticipated time of the TRO hearing, was present at the courthouse when these events took place and there received for the first time plaintiffs' pleadings and moving papers. Defendants' counsel had 30 to 40 minutes to consider these documents before the TRO hearing was held by Judge Kakita. That hearing lasted approximately 30 minutes. At its conclusion the court issued the requested TRO and set October 19, 1988, as the date for hearing on an order to show cause (OSC) as to why a preliminary injunction should not be issued.

On October 13, 1988, the date set by the court for the filing of opposition to the OSC, defendants filed, in addition to their opposition papers, a

---

[1] There is no contention made by any of the parties that the Local Rules were not properly adopted or that all required statutory procedures, including those specified in Government Code sections 68071 and 68612, were not satisfied. (See fn. 13, *post*.)

motion to disqualify Judge Kakita pursuant to section 170.6.[2] That motion was opposed by plaintiffs and denied by Judge Kakita on October 19, 1988.[3] The court then set November 2, 1988, as the date for the hearing on the preliminary injunction.[4]

Defendants sought a writ of prohibition from this court. On November 2, 1988, we issued an alternative writ and an order staying the hearing on the preliminary injunction, but directing that the TRO remain in effect. We also requested counsel to present the court with further arguments relating specifically to the application of Local Rule 1104.1 and our recent decision

---

[2] Code of Civil Procedure section 170.6 provides in pertinent part:

"(1) . . . .

"(2) Any party to or any attorney appearing in any such action or proceeding may establish such prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath that the judge, court commissioner, or referee before whom such action or proceeding is pending or to whom it is assigned is prejudiced against any such party or attorney or the interest of such party or attorney so that such party or attorney cannot or believes that he cannot have a fair and impartial trial or hearing before such judge, court commissioner, or referee. *Where the judge,* court commissioner, or referee *assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. . . . If the motion is directed to a hearing (other than the trial of a cause), the motion must be made not later than the commencement of the hearing. In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be.* The fact that a judge, court commissioner, or referee has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion provided for herein at the time and in the manner hereinbefore provided." (Italics added.)

[3] In denying the motion, Judge Kakita stated: "THE COURT: With regard to the motion on 170.6, although I'd like to get rid of the case, I don't think you're timely. [¶] I think it should have been filed at the time of the T.R.O., and once arguments with regard to the T.R.O. commenced, I think that was the end of your time to file the 170.6."

[4] It appears that the matter was set over to a new date because Judge Kakita, aware that a section 170.6 challenge had been filed but unaware that it would be opposed, had not prepared for the hearing on October 19, 1980. When the matter was called on the October 19 calendar, the Judge stated: "THE COURT: Okay. I understand there's been a 170.6 filed against this court by defendants.

"I recall that this matter was here earlier on a temporary restraining order which the court sat and heard oral argument on.

"As a result of the—I was about to look at these documents last night and I noticed the 170.6 and said, 'Hey, you know, it's going to be out of this courtroom.' Now I see there's opposition to it.

"This case has not been worked up yet and so the court is not prepared to go forward with regard to the—the motion for preliminary injunction today but I'm willing to entertain the 170.6 arguments on it."

in *Landmark Holding Group, Inc.* v. *Superior Court* (1987) 193 Cal.App.3d 525 [238 Cal.Rptr. 475].[5]

### ISSUES PRESENTED

The critical question which we are asked to resolve is whether defendants' assertion of a challenge to Judge Kakita under section 170.6 was timely. The answer to that depends on our resolution of two issues: (1) Were defendants required by the terms of section 170.6, subdivision (2), to assert the challenge immediately upon learning of Judge's Kakita's identity or were they allowed 10 days to make such challenge as provided in Local Rule 1104.1;[6] and

(2) If Local Rule 1104.1 controls, did defendants waive the 10-day period provided for in that rule by not asserting the challenge *before* the TRO was heard by the trial court.

### DISCUSSION

Defendants rely upon Local Rule 1104.1 and argue that they had 10 days from October 7, 1988, the date they appeared in the action by opposing the application for the TRO, in which to assert a challenge to the assigned

---

[5]In addition, we subsequently requested counsel to be prepared at oral argument to address the impact of the Legislature's recent amendment to Government Code section 68612 (Stats. 1988, ch. 1200, §§ 3 & 8) which became effective as an urgency measure on September 22, 1988 (see fn. 13, *post*). At oral argument counsel urged differing interpretations of that amendment. As a result, we deemed it appropriate to obtain its legislative history and determined, after reviewing such history and giving the parties a reasonable opportunity to meet it, to take judicial notice thereof. (Evid. Code, §§ 452, subd. (c), 455, subd. (a) and 459, subds. (c) & (d).)

[6]Local Rule 1104.1 provides: "*Time Limitation. A motion asserting a challenge to an I/C Judge* [defined in Local Rule 1101.4 as a judge assigned to the project and handling cases on an individual or all-purpose calendar] *under Code of Civil Procedure Section 170.6 must be made within 10 days after notice of the assignment of a case to such I/C Judge* (see *Augustyn* v. *Superior Court* (1986) 186 CA3d 1221, 1226-1229). With respect to Existing Cases [defined in Local Rule 1101.1 as cases filed in the Central District on or before December 31, 1987, and assigned to a single judge for all purposes in accordance with Government Code section 68609], such notice will be deemed given by the earlier of the Notice of Status Conference described in Rule 1105, below, or the filing (as to the moving party) and service (as to all other parties) of any notice of motion or demurrer filed after the case has been assigned to an I/C Judge. *With respect to the New Cases* [defined in Local Rule 1101.2 as cases filed in the Central District on or after January 1, 1988, and assigned to a single judge for all purposes in accordance with Government Code section 68609], *such notice* will, for a plaintiff, occur on the date of the filing of the complaint (or, if a challenge has not been previously exercised, upon notice of the assignment of a replacement I/C Judge) and *for all other parties will occur on the date on which they make an appearance in the action* (or, if a challenge has not been previously exercised, upon notice of the assignment of a replacement I/C Judge)." (Italics added.)

judge under section 170.6. They further contend that their participation in the TRO hearing did not constitute a waiver of their right to later assert a challenge to the trial judge within said 10-day period. (*Landmark Holding Group, Inc.* v. *Superior Court, supra,* 193 Cal.App.3d 525.) Plaintiffs claim that Local Rule 1104.1 conflicts with the provisions of section 170.6, subdivision (2), as interpreted and applied in *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407 [241 Cal.Rptr. 818] and *Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221 [231 Cal.Rptr. 298], and therefore must yield. In addition, they argue, defendants' participation in the TRO hearing, after learning 30 minutes before of the trial judge's identity, constituted a waiver of their right to assert a challenge against him.

1. *The Local Trial Court Delay Reduction Rules Prevail Over the Provisions of Section 170.6, Subdivision (2), as to the Time During Which a Challenge May Be Asserted in Project Cases*

While it is true that the assignment of the case to Judge Kakita was for all purposes (Local Rule 1103.9),[7] it was an assignment made immediately upon the filing of the action. This was a "New Case," as defined by Local Rule 1101.2 (see fn. 6, *ante*). Under Local Rule 1104.1, plaintiffs had 10 days in which to assert a challenge under section 170.6. Defendants had 10 days after their first appearance in the action in which to make a determination regarding such a challenge. In providing this fixed 10-day period the drafters of the Local Rules obviously were attempting to adjust the need to give counsel and the parties, *on each side,* a fair opportunity to reflect and consider on the issue of a challenge to the assigned judge while minimizing the risk that a particular trial judge might invest considerable time in a case only to be subsequently removed by a late-filed challenge.

This brief 10-day period is particularly important to a defendant who first appears in an action, as did the defendants here, by responding on short (24-hour) notice to an ex parte application for a temporary restraining order. Defendants, aware that the case had been assigned under the project to a particular judge, were charged with knowledge of the duly adopted Local Rules. (*Beverly Union Co.* v. *Superior Court* (1988) 206 Cal.App.3d 40, 43 [253 Cal.Rptr. 359]; *Brekhus & Williams* v. *Parker-Rhodes* (1988) 198 Cal.App.3d 788, 791 [244 Cal.Rptr. 48].) That knowledge would necessarily include, and induce reliance upon, the provisions of Local Rule 1104.1

---

[7] Local Rule 1103.9 provides: "*Assignment For All Purposes.* The assignment of both Existing and New Cases shall be for all purposes, including trial. Except as the Presiding Judge may otherwise direct, each I/C Judge shall schedule, hear and decide all matters, including law and motion and writ and injunctive proceedings for each Existing and New Case assigned."

which gave them 10 days to assert a challenge to the assigned judge under section 170.6. Defendants received a copy of the complaint and plaintiffs' moving papers at the same time they learned of Judge Kakita's assignment. They had only 30 to 40 minutes to review them and prepare their opposition before the judge commenced the hearing which resulted in the issuance of the TRO.

Under the provisions of section 170.6, subdivision (2), there are two separate time limitations relevant to the issues of this proceeding. "Generally, a motion [asserting a judicial challenge] is permitted any time before the beginning of a trial or a hearing. [Citation.] There are two express statutory exceptions to the general rule set forth in section 170.6, subdivision (2) . . . ." (*Waldon* v. *Superior Court* (1987) 196 Cal.App.3d 809, 814 [241 Cal.Rptr. 123].) The first is the *10-day—5-day* rule. It provides that where the judge "who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing," the motion to challenge shall be made at least five days before that date.[8] The second is the *master calendar* rule which requires a party to assert a challenge motion "not later than the time the cause is assigned for trial."[9]

There is no specific provision in section 170.6 about assignments to a judge for "all purposes." However, section 170.6, subdivision (2), does provide that "In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be."

There have been three decisions which have sought to describe the rule which should apply when an all-purpose assignment has been made. In *Zdonek* v. *Superior Court* (1974) 38 Cal.App.3d 849 [113 Cal.Rptr. 669], division 4 of this district concluded that an assignment for all purposes, including a future rather than immediate trial, was not a master calendar assignment requiring prompt assertion of a section 170.6 challenge. Instead, the 10-day—5-day rule applied.

[8] As we note below, the 10-day—5-day rule has been determined to be not applicable to all-purpose assignments. However, as defendants correctly argue, if it were, their challenge, made on October 13, 1988 (six days before the hearing on the preliminary injunction) was timely as to that hearing.

[9] In addition, plaintiffs urge the application of the "commencement of hearing" rule set out in section 170.6, subdivision (2), which requires that a challenge "directed to a hearing (other than the trial of a cause), . . . must be made not later than the commencement of the hearing." They argue that this provision further supports their contention that defendants had to assert a challenge against Judge Kakita before the TRO hearing was held. However, this argument has no merit in light of our decision in *Landmark Holding Group, Inc.* v. *Superior Court, supra,* 193 Cal.App.3d 525, 528-529. As we discuss in more detail below, defendants were not obligated to assert the challenge prior to the TRO hearing in order to preserve their right to a challenge and their ultimate assertion of the challenge prior to the preliminary injunction hearing was timely under this portion of section 170.6.

This decision was criticized and rejected by the Fourth District in *Augustyn* v. *Superior Court, supra,* 186 Cal.App.3d 1221, where a challenge to an all-purpose assignment, made approximately three months after the assignment, was attacked as untimely. The court concluded that the master calendar rule applied to the all-purpose assignment. The court stated, "In the case of an all-purpose assignment, that assignment instantly pinpoints and establishes for all purposes the identity of the judge in the matter. The litigant does not need any further information to know who will try the case. There is no policy reason to allow further postponement of the decision whether to challenge. Further, . . . to allow such postponement frustrates the entire purpose of an all-purpose assignment, to expedite complex matters by permitting one judge to handle the entire matter from start to finish, acquiring an expertise regarding the factual and legal issues involved which will expedite the process." (*Id.,* at p. 1228.)

*Augustyn* was followed by *Woodman* v. *Superior Court, supra,* 196 Cal.App.3d 407, where the same panel which had decided *Zdonek* concluded that its earlier decision was incorrect. In *Woodman,* a criminal case, the People sought to assert a challenge against the trial judge, who had been assigned for all purposes, including trial, *nearly a year earlier*. The court rejected its prior opinion in *Zdonek* as "wrongly decided" and concluded that the master calendar rule, requiring the *immediate* assertion of the challenge upon learning of the assignment of the trial judge, was the proper rule. The court stated, "An all-purpose assignment clearly contemplates assignment to a specific judge to process the litigation in its totality rather than a trial department in which the identity of the judge is subject to the vagaries of personal and administrative necessity. The purpose of such assignment is to permit the efficient disposition of complex matters and this commendable purpose would be utterly frustrated unless there is certainty that once assigned, the all-purpose judge will preside over the action from beginning to end. The purpose of the disqualification statute is, after all, to promote fair and impartial trials, not to serve as a device by which one party or the other can inordinately delay or otherwise frustrate the judicial proceedings. (*Garcia* v. *Superior Court* (1984) 156 Cal.App.3d 670, 677 [203 Cal.Rptr. 290].)" (*Id.,* at p. 421.)

Thus, without regard to the impact of the Local Rules, the state of the law seems clearly to be that all-purpose assignments require assertion of a section 170.6 challenge "at the time" the assignment is made to a specific all-purpose judge. For plaintiffs, this is the end of the discussion. The assignment of the judge under the project is certainly for all

purposes, including trial. Thus, they ask, does not the express language of Section 170.6, subdivision (2), as interpreted and construed by *Augustyn* and *Woodman,* compel the conclusion that defendants' challenge of Judge Kakita came too late?

■ In our view, plaintiffs' argument overlooks the significance of the Legislature's determination to grant wide procedural latitude to the project trial courts in their development of the rules and procedures to implement the Act. That legislation clearly represented a fundamental change in the approach to the problem of court congestion. It embraced the principle of active judicial management which required that trial judges aggressively monitor and manage litigation from the filing of the first pleading until final disposition. This effort to transfer control of the pace and timing of litigation from the lawyers to the trial judge was a major departure from long-accepted traditional practice.

Thus, broad authority was necessarily given to the project trial courts by the Act to fashion rules appropriate to carrying out the Act's basic and fundamental purposes. The authority given to the Judicial Council to adopt standards for the timely disposition of cases (Gov. Code, § 68603)[10] and the direction given to the project trial courts to adopt, utilize and enforce procedures, standards and policies which would be used in the project (Gov. Code, §§ 68608 and 68612)[11] necessarily recognized that some

[10] Section 68603 provides: "(a) On or before July 1, 1987, the Judicial Council shall adopt standards of timely disposition for the processing and disposition of civil and criminal actions. The standards shall be guidelines by which the progress of litigation in the superior court of every county may be measured. In establishing such standards, the Judicial Council shall be guided by the principles that litigation, from commencement to resolution, should require only that time reasonably necessary for pleadings, discovery, preparation and court events, and that any additional elapsed time is delay and should be eliminated.

"(b) The Judicial Council may adopt the standards of timely disposition adopted by the National Conference of State Trial Judges and the American Bar Association or may adopt different standards, but in the latter event shall specify reasons for approval of any standard which permits greater elapsed time for the resolution of litigation than that provided in the standards of the National Conference of State Trial Judges."

[11] Section 68608 provides: "The judges selected for an exemplary delay reduction program shall commence operation of the program on January 1, 1988, continuing for a three-year period. The judges involved in such programs shall have the responsibility to eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action.

"In operation of an exemplary delay reduction program, the judges of the program shall, consistent with the policies of this article: (a)  Actively monitor, supervise and control the

conflict might arise with procedures and time limits contained in either the rules of court or in statutes.

Initially, Government Code section 68612 *expressly* authorized deviation only from the rules of court, but said nothing about the consequences of any conflict with a statute. However, the urgent nature of the problem which the Act sought to address,[12] and the broad scope of the authority given to the Judicial Council and the project trial courts by the Act, when read in its entirety, strongly implied that there was authority for procedural deviation from statutory language in ways *reasonably necessary* to carry out the clearly stated and mandatory provisions and goals of the Act. Subsequent action of the Legislature confirms this view.

In an amendment to Government Code section 68612,[13] which, due to an urgency clause, became effective on *September 22, 1988* (about two weeks

---

movement of all cases assigned to the program from the time of filing of the first document invoking court jurisdiction through final disposition.

"(b)  Seek to meet the standards for timely disposition adopted pursuant to Section 68603.

"(c)  Establish procedures for early identification of cases within the program which may be protracted and for giving such cases special administrative and judicial attention as appropriate, including special assignment.

"(d)  Establish procedures for early identification and timely and appropriate handling of cases within the program which may be amenable to settlement or other alternative disposition techniques.

"(e)  Adopt a trial setting policy which, to the maximum extent possible, schedules a trial date within the time standards adopted pursuant to Section 68603 and which schedules a sufficient number of cases to ensure efficient use of judicial time while minimizing resetting caused by overscheduling.

"(f)  Commence trials on the date scheduled.

"(g)  Adopt and utilize a firm, consistent policy against continuances, to the maximum extent possible and reasonable, in all stages of the litigation."

Prior to its amendment in 1988, section 68612 provided: "The judges selected in each county as judges of an exemplary delay reduction program shall, in consultation with the bar of the county to the maximum extent feasible, develop, and publish the procedures, standards, and policies which will be used in the program, including time standards for the conclusion of all critical steps in the litigation process, including discovery, and shall meet on a regular basis with the bar of the county in order to explain and publicize the program and the procedures, standards, and policies which shall govern cases assigned to the program. Such procedures, standards, and policies may be inconsistent with the California Rules of Court. In its discretion, the Judicial Council may assist in the development of, or may develop and adopt, any or all of such procedures, standards, or policies on a statewide basis."

[12] "The Legislature enacted the Trial Court Delay Reduction Act in response to the urgent public need to reduce litigation delays that have reached, in some counties, scandalous proportions." (*Beverly Union Co.* v. *Superior Court, supra,* 206 Cal.App.3d 40, 43.)

[13] Section 68612, as amended, now reads: "The judges selected in each county as judges of an exemplary delay reduction program shall, in consultation with the bar of the county to the maximum extent feasible, develop, and publish the procedures, standards, and policies which will be used in the program, including time standards for the conclusion of all critical steps in the litigation process, including discovery, and shall meet on a regular basis with the bar of

*before* this action was filed), the Legislature provided that the procedures, standards and policies adopted by the project trial courts could not only be inconsistent with the rules of court but such courts were also permitted to "impose procedural requirements in addition to those authorized by statute" and to "shorten any time specified by statute for performing an act." ■ The Legislature regarded this not as a change in the law but merely declaratory of existing law under the Act.[14]

■ Plaintiffs vigorously argue that to permit defendants 10 days in which to assert a section 170.6 challenge does not shorten, but rather extends, an existing statutory time period. They contend section 170.6, as construed by *Augustyn* and *Woodman,* provides for a much shorter period and Local Rule 1104.1 is thus in derogation not furtherance of the expeditious litigation goals of the Act. We disagree.

---

the county in order to explain and publicize the program and the procedures, standards, and policies which shall govern cases assigned to the program. *Those* procedures, standards, and policies may be inconsistent with the California Rules of Court, *may impose procedural requirements in addition to those authorized by statute, and may shorten any time specified by statute for performing an act. Time for service of notice or other paper under Sections 1005 and 1013 of the Code of Civil Procedure and time to plead after service of summons under Section 412.20 of the Code of Civil Procedure shall not be shortened except as provided in those sections. The procedures, standards, and policies to be used in the program shall be filed, distributed, and maintained pursuant to Section 68071 and the California Rules of Court, and shall also be published for general distribution.* In its discretion, the Judicial Council may assist in the development of, or may develop and adopt, any or all of such procedures, standards, or policies on a statewide basis." (Italicized material added by the amendment.)

[14] This amendment to Government Code section 68612 was set out in section 3 of Assembly Bill No. 3830 (Stats. 1988, ch. 1200). Section 8 of the bill provides, "The provisions of Section 3 of this act do not constitute a change in, but are declaratory of existing law." A review of the legislative history of Assembly Bill No. 3830 demonstrates that what the Legislature was seeking to do was (1) clarify the authority originally given under the Act and (2) ratify and validate any local court rules adopted prior to the amendment which may have conflicted with statutory provisions.

"The primary goal of [Assem. Bill No. 3830] is to clarify the intent of [the Act]. . . . Some local rules adopted in furtherance of this program have been challenged as contrary to statutory prescription. . . . [¶] The author of [Assem. Bill No. 3830] would argue that local discretion in adopting rules to shorten time and adjust procedure is absolutely essential to the success of the program. It should be noted that local judges are not without constraint in this regard, even though the point of the program is judicial case management. Rules may be adopted only in consultation with the local Bar, and the Judicial Council serves as a monitor of performance. [¶] Clarifying the propriety of local rules adopted to reduce delay is consistent with the original legislative intent that innovative approaches be pursued by the local judiciary to act expeditiously." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3830 (1987-1988 Reg. Sess.) as amended May 18, 1988.)

"[Assem. Bill No. 3830] will have the effect of ratifying these local rules [adopted pursuant to the Act] and reaffirming the Legislature's original intent, namely, that cases shall be litigated expeditiously. [¶] The author [of Assem. Bill No. 3830] argues that the value of [the Act] will be greatly reduced if the participating courts do not have the authority to shorten time and require additional procedures." (Assem. Office of Research, 3d reading analysis of Assem. Bill No. 3830 (1987-1988 Reg. Sess.).)

First, we view Local Rule 1104.1 as a "procedural requirement" not otherwise provided for in section 170.6 with respect to all-purpose judicial assignments in the project. Thus, the question of whether the rule shortens or lengthens a statutory time period is simply not reached. Secondly, the traditional all-purpose assignment made by a master calendar judge (and this certainly includes the assignments made in *Augustyn* and *Woodman*) is made more than 10 days after a case has been filed. To require that a party have no more than 10 days after appearance in the action in which to assert a challenge is at least compatible with the goals of the Act and represents a reasonable accommodation with the obvious due process problems which would be created if we embraced plaintiffs' argument.

We therefore hold that a project rule, duly adopted under the mandate of Government Code section 68612, and not expressly prohibited thereby, which either imposes a procedural requirement not authorized by statute or shortens the time specified by statute for performance of an act, will control, to the extent reasonably necessary to carry out and further the provisions and goals of the Act, in those cases to which the project rules apply. Thus, the provisions of Local Rule 1104.1, which impose the procedural requirement that a challenge under section 170.6 against a project judge must be made within a fixed period of 10 days following a defendant's appearance in the action, apply in this case. The rule endorsed by *Augustyn* and *Woodman* imposing the master calendar rule on all-purpose assignments, thereby requiring an immediate assertion of a challenge, will not apply in project cases where, as here, duly adopted project rules expressly provide otherwise.[15]

Therefore, defendants' exercise of a section 170.6 challenge against Judge Kakita, by the filing of a proper motion on October 13, 1988, was timely under Local Rule 1104.1, unless they had lost the right to assert that challenge by their participation in the ex parte TRO hearing.

---

[15]We respectfully disagree with the suggestion contained in *Swenson* v. *Superior Court* (1988) 202 Cal.App.3d 348, 350 [248 Cal.Rptr. 340], that the 10 days provided for in Local Rule 1104.1 was simply in anticipation of mail delays and that the reference to *Augustyn* in the body of the rule was to put parties on notice that a peremptory challenge to an assigned judge had to be given "at the earliest possible moment." (*Id.,* at p. 350.) In our view, the more reasonable explanation of the reference to *Augustyn* was to demonstrate that the rule drafters had rejected the 10-day—5-day rule of *Zdonek* v. *Superior Court, supra,* 38 Cal.App.3d 849 (which was then an unrecanted decision), and had adopted the master calendar approach of *Augustyn,* but had superimposed thereon, for the reasons already discussed above, a specific 10-day limitation. This case is perhaps a paradigm illustration of the wisdom and fairness of that 10-day period. If it were not available it would place upon the defendants, faced with responding to an application for a temporary restraining order, the unreasonable burden of an immediate decision regarding their sole peremptory judicial challenge without a fair opportunity to even read and review the pleadings they had just received and reflect upon the case being asserted against them.

## 2. *Defendants' Participation in the TRO Does Not Bar the Assertion of an Otherwise Timely Challenge Under Section 170.6*

■ The answer to the question of whether defendants waived their right to assert a challenge within 10 days by participation in the TRO hearing depends upon whether that hearing involved the resolution of a contested fact issue. " 'Prior to 1965, if a party failed to exercise his section 170.6 rights before a pretrial hearing involving a contested issue of law or fact, he lost his right to peremptorily disqualify the judge.' (*In re Abdul Y.* (1982) 130 Cal.App.3d 847, 857 [182 Cal.Rptr. 146], citing *Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195 [41 Cal.Rptr. 721].) 'In 1965, the Legislature, at the suggestion of the State Bar of California, adopted the following amendment to section 170.6, subdivision 2: "The fact that a judge has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and not involving a determination of *contested fact issues relating to the merits* shall not preclude the later making of the motion [to disqualify] provided for herein at the time and in the manner hereinbefore provided." [Citation.]' (*Kohn* v. *Superior Court* (1966) 239 Cal.App.2d 428, 429-430 [48 Cal.Rptr. 832].) (Italics in original.) 'The underlined language is at the heart of, reflects the motivating purpose of the 1965 amendment. [*Sic.*] This addition preserves the right of a party to disqualify a judge under . . . section 170.6 notwithstanding the fact the judge had heard and determined an earlier demurrer or motion, or other matter not involving "contested fact issues" relating "to the merits" without challenge in the same cause. [Citation.]' (*In re Jose S.* (1978) 78 Cal.App.3d 619, 626 [144 Cal.Rptr. 309]; accord *Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 825 [209 Cal.Rptr. 844].)" (*Bambula* v. *Superior Court* (1985) 174 Cal.App.3d 653, 656-657 [220 Cal.Rptr. 223].)

"As stated in *Kohn* v. *Superior Court* (1966) 239 Cal.App.2d 428, 430 [48 Cal.Rptr. 832], it is 'crystal clear' that a motion to disqualify a judge can be made after any hearing or proceeding which does not involve a contested fact issue. In order to act as a bar to the motion to disqualify, the judge must have actually resolved conflict in factual contentions relating to the merits. (*Id.,* at pp. 430-431.)" (*Landmark Holding Group, Inc.* v. *Superior Court, supra,* 193 Cal.App.3d 525, 527.)

In *Landmark,* we concluded that an ex parte hearing concerning a TRO did not involve the determination of a contested fact issue so as to constitute a bar (pursuant to § 170.6, subd. (2)) to an otherwise timely exercise of a challenge to an assigned judge. We said there, "The ex parte hearing concerning a TRO is no more than a review of the conflicting contentions to determine whether there is a sufficiency of evidence to support the issuance

of an interlocutory order to keep the subject of litigation in status quo pending a full hearing to determine whether the applicant is entitled to a preliminary injunction. (*Gray* v. *Bybee* (1943) 60 Cal.App.2d 564, 571 [141 P.2d 32].) The issuance of a TRO is not a determination of the merits of the controversy. (*Ibid.*) All that is determined is whether the TRO is necessary to maintain the status quo pending the noticed hearing on the application for preliminary injunction. (*Biasca* v. *Superior Court* (1924) 194 Cal. 366, 367 [228 P. 861].)" (*Landmark Holding Group, Inc.* v. *Superior Court, supra,* 193 Cal.App.3d 525, 528.)

"A TRO is purely transitory in nature and terminates automatically when a preliminary injunction is issued or denied. (*Houser* v. *Superior Court* (1932) 121 Cal.App.31, 33 [8 P.2d 483].) No final determination of a contested fact issue is made during the ex parte proceeding. A disposition of an incidental matter not affecting the merits of the case cannot act as a bar to the statutory right provided by section 170.6. We therefore conclude a peremptory challenge under section 170.6 is timely when filed subsequent to an ex parte proceeding concerning a TRO and prior to the hearing on a preliminary injunction, where, as here, said challenge is filed in accord with the statutory time periods set forth in section 170.6, subdivision (2)." (*Landmark Holding Group, Inc.* v. *Superior Court, supra,* 193 Cal.App.3d 525, 529.)

*Landmark* is dispositive of the issue raised here by the plaintiffs. We perceive no essential difference between the facts here and those in *Landmark.* Plaintiffs' contention that the TRO issued here by Judge Kakita was a change rather than a maintenance of the status quo misses the point and, at most, simply highlights a distinction without a difference.[16] It is not the impact of the order which is issued so much as it is the transitory and temporary nature of a TRO which causes us to conclude that an otherwise timely challenge will not be barred by the procedural circumstance that a TRO has been issued or that a challenging party has participated in the ex parte hearing which led to it.

---

[16]Plaintiffs argue that since Lanham had been engaging in the allegedly improper activities on the RTP job site for a number of months, an order restraining him was more than a mere maintenance of the status quo, but in fact was a change. However, the record reflects that the behavior of Lanham which plaintiffs sought to restrain (i.e., harassment of plaintiffs' employees) was apparently of a far more recent vintage. Plaintiffs did not express objection to Lanham's activities until September 15, 1988. Thus, his actions prior to that date were apparently not of the same character as those to which plaintiffs now take exception and which are the subject of these proceedings.

Here, defendants' challenge, as we have held, was otherwise timely asserted. They cannot be barred from asserting that challenge by their efforts at the ex parte hearing to prevent issuance of the TRO.[17]

## DISPOSITION

The petition for a writ of prohibition is granted.

Klein, P. J., and Arabian, J., concurred.

---

[17]Plaintiffs' argument that to permit defendants' challenge will promote judicial inefficiency due to the loss of Judge Kakita's experience with the case is not supported by the record. According to plaintiffs' own declarations, Judge Kakita only had 15 minutes to review the file prior to the commencement of the TRO hearing. The hearing itself lasted 30 minutes. It does not appear that Judge Kakita reviewed the file again before ruling to deny defendants' challenge on October 19, 1988 (see fn. 4, *ante*). Certainly, any involvement which Judge Kakita may have had with the case subsequent to the assertion of defendants' challenge cannot be urged as a reason for its denial.