[No. D007707. Fourth Dist. Div. One. Mar. 16, 1989.]

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 89, AFL-CIO et al., Plaintiffs, v. EL DORADO LANDSCAPE COMPANY et al., Defendants;

DONALD A. HON, Objector and Appellant; v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent.

**COUNSEL**

Donald A. Hon, in pro. per., for Objector and Appellant.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Richard C. Jacobs, Special Assistant Attorney General, Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Barbara Baird, Deputy County Counsel, as Amici Curiae on behalf of Respondent.

**OPINION**

**HUFFMAN, J.**—Attorney Donald A. Hon represents the plaintiffs Laborers' International Union of North America, AFL-CIO, Local 89 et al., in this lawsuit against El Dorado Landscape Company et al. Appealing an order imposing sanctions, Hon challenges the constitutionality of the San Diego County "Fast Track" rules (Fast Track rules) enacted to implement the Trial Court Delay Reduction Act of 1986 (the Act). (Gov. Code, § 68600 et seq.)[1]

Procedurally, Hon failed to timely file the required joint at-issue memorandum under Fast Track rule 10.7(a) or a certificate as to why one was not filed in this case pursuant to Fast Track rules 10.7(b)(1)-10.7(b)(4).[2] The trial court thus issued an order to show cause (OSC) under Fast Track rule 10.7(b)(5) which provided at that time: "Failure to timely file a joint at issue memorandum or a Certificate: At Issue Memorandum Not Filed will result in the issuance of an order to show cause why any party or counsel shall not be sanctioned for failure to do so."[3] At the scheduled OSC hearing, the

---

[1] All statutory references are to the Government Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[2] Even though rules 10.7(b)(1)-10.7(b)(4) were renumbered as rules 10.7(c)(1)-10.7(c)(4) on January 1, 1989, the text of the rules remain the same. These rules provide for an application for an extension of time in which to file a joint at-issue memorandum when a case is not ready to proceed to trial, the memorandum itself is not ready to be filed, or discovery is incomplete.

All references to the Fast Track rules will be to the rules as they existed before the January 1, 1989, amendments unless otherwise stated.

[3] Fast Track rule 10.7(b)(5) was revised, effective January 1, 1989, and now reads: "Failure to timely file a joint at-issue memorandum or a certificate: at-issue memorandum not filed

court imposed $150 sanctions against Hon for failing to timely file the joint at-issue memorandum and directed Hon to file one within two weeks.

A week later, the court, finding good cause shown, granted Hon's ex parte request for relief from the sanctions order and stated the joint at-issue memorandum must be filed no later than February 9, 1988. Hon, however, again failed to file the joint at-issue memorandum. The court then issued a second OSC as to why sanctions should not be imposed, ordering Hon to appear and give any legal reason why the time standards under the Fast Track rules were not met and giving notice the issue of sanctions under Code of Civil Procedure sections 177.5 and 575.2 would also be before the court.[4]

■ ■ ■ ■ Although Hon subsequently filed the memorandum February 18, 1988, the trial court at the second OSC hearing found it untimely and ordered sanctions against Hon in the amount of $150. Hon appeals[5] from this second order.

Hon specifically contends the Fast Track rules are unconstitutional because they violate article VI, section 1a of the California Constitution (see *post,* pp. 1004-1005), because this court has already ruled the Fast Track rules do not annul or make inoperative previous statutes and case law, because the Fast Track rules violate Code of Civil Procedure section 177.5 and violate the due process clause of the 14th amendment of the United States Constitution, and because the nine counties that have adopted "Fast

---

may result in the issuance of an order to show cause why any party or counsel shall not be sanctioned for failure to do so. If the court finds a party has refused or failed without justification to sign the joint at-issue memorandum, the court may order it deemed signed without objection."

[4] Code of Civil Procedure section 177.5 provides for money sanctions payable to the county in which the judge is located for "any violation of a lawful court order by a person, done without good cause or substantial justification."

Section 575.2 of the Code of Civil Procedure provides for penalties "if any counsel, a party represented by counsel, or a party if in pro se, fails to comply with any of the requirements" of local rules made by the local court under Code of Civil Procedure section 575.1.

[5] Although generally an appeal may be taken only from a final judgment, from orders after judgment, and from specified appealable orders (Code Civ. Proc., § 904.1), an exception is recognized when there is a final determination made in a collateral matter distinct and severable from the general subject of the litigation. (See *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 502 [120 Cal.Rptr. 176].) An order directing an attorney to pay sanctions is such an appealable collateral matter. (*I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103 [708 P.2d 682].)

Newly enacted Code of Civil Procedure section 904.4, effective January 1, 1989, concerning the nonappealability of an order for monetary sanctions for less than $500 in San Diego County cases, is inapplicable here; that section only applies to sanctions awarded under Code of Civil Procedure sections 128.5 and 2023.

Track" rules pursuant to the Act have established arbitrary and variable standards in violation of article VI, section 1(a), subsection 5, of the California Constitution and section 68070. San Diego County Counsel and the Attorney General of California have each filed briefs as amicus curiae in support of respondent San Diego Superior Court. As we shall discuss, Hon's contentions have no merit and we affirm the order of the trial court imposing sanctions against him.

DISCUSSION

Before separately addressing Hon's various arguments, we make some general comments about the California Constitution, the Act and Hon's apparent misconceptions regarding the Act and how it relates to the California Constitution.

A

■ To digress for a moment, the California Constitution contains both restrictive and enabling provisions. Because it delineates a separation of powers among the executive, judicial and legislative branches of government, it is generally considered a restriction upon the powers of the state. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 51, p. 93.) As such, we look to it only to determine whether the Legislature is prohibited from doing a certain act and not whether the Legislature is authorized to do the act. (*Ibid.*; see also *Sheehan* v. *Scott* (1905) 145 Cal. 684, 686-687 [79 P. 350], overruled on another point by *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 718 [484 P.2d 578].) Accordingly, all intendments favor legislation and constitutional limitations are strictly construed. (*Sheehan* v. *Scott, supra,* at p. 686.)

■ If a person challenges the constitutionality of a legislative act, we presume the act to be constitutional. ■ Any unconstitutionality of a legislative enactment or statute must be clearly shown, with doubts being resolved in favor of its validity. (*Federation of Labor* v. *McAdory* (1943) 325 U.S. 450 [89 L.Ed. 1725 [65 S.Ct. 1384]; *People* v. *Globe Grain & Mill. Co.* (1930) 211 Cal. 121, 127 [294 P. 3].) ■ Furthermore, we will not usually consider the constitutionality of a statute or rule at the request of a person not aggrieved by it. The burden is on the party to show some injury, actual or threatened, by operation of the statute or rule. (*People* v. *Perry* (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331].)

At the outset, we note that Hon fails to recognize these well-established principles and the fact that it is the Legislature and not the Judicial Council

that is unrestricted in its power by the California Constitution to legislate, i.e., to enact laws, for the State of California. (Cal. Const., art. IV, § 1.) Because of this failure, Hon has not recognized the significance of the Legislature's enactment of the Act and its decision to grant to the project courts under the Act wide procedural latitude in developing their own rules and procedures to implement the Act in "response to the urgent public need to reduce litigation delays that have reached, in some counties, scandalous proportions." (*Beverly Union Co.* v. *Superior Court* (1988) 206 Cal.App.3d 40, 43 [253 Cal.Rptr. 359].) The Act as adopted declared the "expeditious and timely resolution of civil . . . actions is an integral and necessary function of the judicial branch of state government under Article VI of the California Constitution." (§ 68601(a).)

The Act mandates that nine exemplary delay reduction programs be established (§ 68605) and continued for a period of three years. (§ 68608.) The judges in each program are given the responsibility to "eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action." (§ 68608.) To carry out these duties, the Act charges the judges of each program to establish procedures *consistent with the policies of the Act.* (§ 68608(a)-(g).)

The Act additionally mandates the Judicial Council to collect and maintain statistics during the three-year experimental period and requires the council to report to the Legislature on the results of the delay reduction program at the end of that time and recommend whether the program, and which procedures, should be adopted in trial courts statewide. (§ 68611.) The Judicial Council is also charged with reviewing all local delay reduction rules adopted or revised by the various program courts and is given discretion to develop or adopt procedures, standards or policies of the trial courts on a statewide basis. (§ 68612.) The Judicial Council further may, *"to the extent desirable,"* make suggestions to the program courts of revisions of their rules consistent with other court rules. (§ 68619(a).)

Moreover, the Act also permits voluntary participation in the program by counties under the Trial Court Funding Act of 1985 (§ 68618) and other specified counties. (§ 68618.5.) The Judicial Council is required to adopt uniform rules for those counties adopting a voluntary program under section 68618. (§ 68619(b).)

■ Where, as here, the Legislature has clearly laid down its broad policy and plan and authorized the Judicial Council and trial courts to experiment and work out procedures to carry out that plan and set limits on their authority, this delegation by the Legislature to the courts and Judicial Council is proper and does not violate the constitutional separation of powers. (*American Power & Light Co.* v. *Securities & Exchange Com.* (1946) 329 U.S. 90 [91 L.Ed. 103, 67 S.Ct. 133]; *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 376-379, 381-384 [71 Cal.Rptr. 687, 445 P.2d 303].)

■ Moreover, it is assumed the Legislature had existing laws in mind when it passed the Act, which must be construed to give effect to the Legislature's intent in enacting it as law. (Code Civ. Proc., § 1859; *Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874].) While local rules of court and court policies adopted pursuant to legislative authority generally have the force of procedural statutes as long as they do not conflict with other legislative enactments (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 28 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Estate of Brown* (1987) 193 Cal.App.3d 1612, 1619 [239 Cal.Rptr. 147]), "recent statutory amendment and case law has established that local rules regarding procedural time limits may deviate from statutory language in ways reasonably necessary to carry out the clearly stated and mandatory provisions and goals of the [Act]." (*Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 498.)

As discussed in *International Union of Operating Engineers* v. *Superior Court* (1989) 207 Cal.App.3d 340 [254 Cal.Rptr. 782] (*International*), which determined that the Los Angeles trial court delay reduction rules prevailed over the provisions of Code of Civil Procedure section 170.6(2) as to the time during which a challenge against a judge may be asserted in a project case: "[B]road authority was necessarily given to the project trial courts by the Act to fashion rules appropriate to carrying out the Act's basic and fundamental purposes [as declared in section 68601(a)]. The authority given to the Judicial Council to adopt standards for the timely disposition of cases . . . and the direction given to the project trial courts to adopt, utilize and enforce procedures, standards and policies which would be used in the project . . . necessarily recognized that some conflict might arise with procedures and time limits contained in either the rules of court or in statutes.

"Initially, Government Code section 68612 *expressly* authorized deviation only from the rules of court, but said nothing about the consequences of any conflict with a statute. However, the urgent nature of the problem which the Act sought to address, and the broad scope of the authority given to the Judicial Council and the project trial courts by the Act, when read in

its entirety, strongly implied that there was authority for procedural deviation from statutory language in ways *reasonably necessary* to carry out the clearly stated and mandatory provisions and goals of the Act. Subsequent action of the Legislature confirms this view.

"In an amendment to Government Code section 68612, . . . effective *September 22, 1988 . . .* , the Legislature provided that the procedures, standards and policies adopted by the project trial courts could not only be inconsistent with the rules of court but such courts were also permitted to 'impose procedural requirements in addition to those authorized by statute' and to 'shorten any time specified by statute for performing an act.' The Legislature regarded this not as a change in the law but merely declaratory of existing law under the Act.[6]" (Fns. omitted.) (*International Union of Operating Engineers* v. *Superior Court, supra,* 207 Cal.App.3d at pp. 350-352.)

Further, section 68609(d) of that Act when first drafted specifically stated "[i]n order to enforce the requirements of an exemplary delay reduction program and orders issued in cases assigned to it, the judges of the program shall have all the powers to impose sanctions authorized by law" and encouraged judges to utilize sanctions to achieve the purposes of the Act. (See § 68609(d) before 1988 amendment, Stats. 1986, ch. 1335, § 1; after the September 1988 amendment, section 68609(d) reads, in part: "Judges are encouraged to impose sanctions to achieve the purposes of this article.")

---

[6] In a footnote at this point the court states: "This amendment to Government Code section 68612 was set out in section 3 of Assembly Bill No. 3830 (Stats. 1988, ch. 1200). Section 8 of the bill provides, 'The provisions of Section 3 of this act do not constitute a change in, but are declaratory of existing law.' A review of the legislative history of Assembly Bill No. 3830 demonstrates that what the Legislature was seeking to do was (1) clarify the authority originally given under the Act and (2) ratify and validate any local court rules adopted prior to the amendment which may have conflicted with statutory provisions.

" 'The primary goal of [Assem. Bill No. 3830] is to clarify the intent of [the Act]. Some local rules adopted in furtherance of this program have been challenged as contrary to statutory prescription. . . . [¶] The author of [Assem. Bill No. 3830] would argue that local discretion in adopting rules to shorten time and adjust procedure is absolutely essential to the success of the program. It should be noted that local judges are not without constraint in this regard, even though the point of the program is judicial case management. Rules may be adopted only in consultation with the local Bar, and the Judicial Council serves as a monitor of performance. [¶] Clarifying the propriety of local rules adopted to reduce delay is consistent with the original legislative intent that innovative approaches be pursued by the local judiciary to act expeditiously.' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3830 (1987-1988 Reg. Sess.) as amended May 18, 1988.)

" '[Assem. Bill No. 3830] will have the effect of ratifying these local rules [adopted pursuant to the Act] and reaffirming the Legislature's original intent, namely, that cases shall be litigated expeditiously. [¶] The author [of Assem. Bill No. 3830] argues that the value of [the Act] will be greatly reduced if the participating courts do not have the authority to shorten time and require additional procedures.' (Assem. Office of Research, 3d reading analysis of Assem. Bill No. 3830 (1987-1988 Reg. Sess.).)"

In light of its legislative mandate as a project court, the San Diego Superior Court, in consultation with the San Diego County Bar, adopted its Fast Track rules in section ten of its local rules (Section Ten: Administration of Civil Litigation) and specifically adopted Fast Track rule 10.7(b)(5), from which Hon's appeal arises. Such rule provides the mechanism for the trial court to issue an OSC for sanctions to force a litigant who is dragging his or her feet to explain why a joint at-issue memorandum or a certificate making any valid excuses for not filing one has not been timely filed. The Fast Track rules also contain provisions for the litigant to respond to such OSC (Fast Track rule 10.2(c)) and to avoid the issuance of one in the first place. Specifically, Fast Track rules 10.7(b)(1)-10.7(b)(4) provide for explanation and enlargement of time for complying with the filing of the joint at-issue memorandum before an OSC issues.

As we recently discussed in *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d 491 at page 500, fast track local rules (e.g., Fast Track rule 10.7(b)(5)), along with Code of Civil Procedure sections 575.1, 575.2, 177.5, California Rules of Court, rule 227,[7] and § 68609(d), provide a "comprehensive state-wide scheme of regulation of [and imposition of sanctions in] fast track matters, which attempts to balance the need for expeditious processing of civil matters with the rights of individual litigants." (208 Cal.App.3d at p. 500.) While we did not reach the issue of the constitutionality of the Fast Track rules in *Moyal,* we did hold Fast Track rule 10.7(b)(5) adequately placed attorneys and parties on notice that sanctions may be imposed for noncompliance with the time requirements for filing a joint at-issue memorandum under Fast Track rule 10.7(a). (208 Cal.App.3d at p. 501.)

B

Turning first to Hon's general arguments, we note he makes no contention that the Fast Track rules were not properly adopted or that all required statutory procedures as set out in the Act were not satisfied. He merely contends all the Fast Track rules are unconstitutional and conflict with other statutes or court rules.

Hon, however, has premised his constitutional theories on a section of the California Constitution which was repealed in 1966. Article VI, section 1a, including subsection (5) of that section, which formerly set out the powers of the Judicial Council, was repealed November 8, 1966. That subsection empowered the Judicial Council to "[a]dopt or amend rules of practice and

---

[7] All future reference to specific rule numbers will be to the California Rules of Court unless otherwise specified.

procedure for the several courts not inconsistent with laws that are now or that may hereafter be in force; and the council shall submit to the Legislature, at each regular session thereof, its recommendations with reference to amendments of, or changes in, existing laws relating to practice and procedure."

Relying on our opinion in *Prudential-Bache Securities, Inc.* v. *Superior Court* (1988) 201 Cal.App.3d 924 [247 Cal.Rptr. 477], and this outdated constitutional section concerning the authority of the Judicial Council to make local rules of court, Hon argues the Fast Track rules cannot be allowed to supersede preexisting and governing rules of the Judicial Council and statutes. *Prudential-Bache* and reference to the constitutional powers of the Judicial Council, however, are inapposite here.

In *Prudential-Bache,* the perfecting of an appeal after the denial of a motion to compel arbitration was held to stay any proceedings in the case before the superior court regardless of its designation as a "fast track" case. (*Prudential-Bache Securities, Inc.* v. *Superior Court, supra*, 201 Cal.App.3d at p. 925.) Subsequent amendment to the Fast Track rules has clarified the jurisdictional effect of the taking of an appeal. (See Fast Track rule 10.6, effective January 1, 1989.) Here, no problem exists, as in *Prudential-Bache,* concerning the jurisdiction of the trial court to do further acts which the perfecting of the appeal in *Prudential-Bache* created. *Prudential-Bache* simply involved statutes and case law unrelated to the standards then adopted for the timely disposition of cases set forth in the Fast Track rules.

Moreover, as already discussed, the constitutional power of the Judicial Council to make rules of court is limited by the wording of the constitutional article and section granting it that power and by the Legislature's supreme right to make the laws in California. Article VI, section 6 of the California Constitution now provides in part that the Judicial Council, "[t]o improve the administration of justice [,] shall survey judicial business and make recommendations to the courts, make recommendations annually to the Governor and Legislature, adopt rules for court administration, practice and procedure, *not inconsistent with statute, and perform other functions prescribed by statute.*" (Italics added.) Thus one must look at the statutes enacted by the Legislature to determine the controlling authority of rules of court adopted by the council.

Hon argues the Judicial Council cannot make rules contrary to controlling constitutional and statutory enactments. With this we do not quarrel, except to add that the Legislature can by its own enactment give the Judicial Council the authority to do so and has done just that in the Act. As mentioned earlier, the Act itself requires the Judicial Council to monitor the

rules and results of the project courts involved in the exemplary delay reduction program (§§ 68603-5, 68611, 68619) and to adopt rules applicable to all courts in the program (§ 68619) toward the purpose of facilitating trial court delay reduction. The Act also provides each court in the project can and shall make rules of procedures, standards and policies which may be inconsistent with other procedural requirements. (§ 68612.) Thus procedural rules of court adopted by either the superior court or the Judicial Council for the purpose of assisting in trial court delay reduction can coexist and conflict with statutory law, contrary to Hon's claim they cannot. (See *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d 491; *International, supra,* 207 Cal.App.3d 340.)

Therefore, his contentions that the Fast Track rules are invalid because they conflict with Code of Civil Procedure sections 581(a) and 583(b) and California Rules of Court, rule 206(a) are specious.[9] ■ Hon specifically argues Fast Track rule 10.4(a), which requires return of service within 60 days of the filing of the original complaint, precludes a litigant from taking advantage of the full three- and five-year limitation periods in Code of Civil Procedure sections 581(a) and 583(b), respectively.

Not only is Hon again relying on code sections which have been repealed, he is not a party aggrieved by application of Fast Track rule 10.4(a) because he has already filed the return of service in this case. In addition, the subject matter of the current versions of the discretionary and mandatory dismissal statutes generally concerns final limitation periods before the court may impose the ultimate sanction of dismissal and does not concern the shortened time limits for service to help reduce trial delay under the Fast Track rules. Furthermore, any seeming inconsistency between the three years to return summons provision under Code of Civil Procedure section 583.210 and Fast Track rule 10.4(a) has been clarified by the recent amendment to section 68612 which provides the Fast Track rules may shorten any time limits set out to do an act other than those specifically stated in that section.

■ Concerning former rule 206(a), Hon argues it renders Fast Track rule 10.7(a) void because it allows either party to the lawsuit to file the at-issue memorandum whenever the case is ready for trial, rather than requiring a set time limit for the filing of such by the plaintiff. Not only does Hon

---

[9] Code of Civil Procedure sections 581(a) and 583(b) are now embodied in sections 583.210 et seq. and 583.310 et seq. of that code, respectively. These sections provide certain time limits in which a case must be brought to trial or dismissed.

Rule 206(a) previously set forth the general rules governing the at-issue memorandum. Since 1985 these general rules have been embodied in rule 209. Rule 206 now defines the general duties of all judges.

rely on outdated law, he fails to perceive the philosophy underlying the Act that justice delayed is justice denied and the unmistakable requirement that the judiciary now *take active management and control of cases, from start to finish, for speedy dispute resolution.* (See §§ 68603, 68604, 68608.) Fast Track rule 10.7(a), which requires a joint at-issue memorandum be filed by a plaintiff within 140 days after the defendant answers, was specifically enacted by the San Diego Superior Court under its legislative mandate as a project court, consistent with the policies of the Act.

Even if Hon were relying on the current version of rule 206(a), rule 209, his contention would fail. Under the Act, the Legislature in its wisdom delegated to the Judicial Council and the trial courts the power to enact rules to set time limits for pretrial procedures for the purpose of reducing trial delay. (§§ 68608, 68612, 68619.) Whereas Fast Track rule 10.7(a) sets a time limit for the filing of an at-issue memorandum, while rule 209 does not specify such a time limit, this difference does not invalidate either rule; rather, the Fast Track rule and rule 209 coexist for application to appropriate cases. For example, an eminent domain case not assigned to proceed under the Fast Track rules still utilizes rule 209 for the filing of its at-issue memorandum; that rule is simply no longer used for those cases under the delay reduction program.

Hon's reliance on section 68070 as controlling law over section 68612 is also unpersuasive. Section 68070 states in pertinent part: "Every court may make rules for its own government and the government of its officers not inconsistent with law or with the rules adopted and prescribed by the Judicial Council." As noted earlier, section 68612 now provides that the rules the project courts adopt may be inconsistent with either other rules of court or statutes. Code of Civil Procedure section 34, independent of the Act, additionally allows a court to adopt rules which are inconsistent with otherwise applicable law. That section states: "The provisions of this code relating to the commencement and prosecution of . . . actions and proceedings in trial courts, shall apply to all such courts, except where special provision is made for particular courts . . . ." The Act itself now contains special provisions allowing rules in the project courts to be inconsistent with other rules of court and statutes. (§ 68612.)

That the nine mandated courts involved in the exemplary delay reduction program have differing rules of procedure for each particular "fast track" project is also fully authorized by the Act. (§§ 68612, 68619(a).) Each court is mandated to establish and publish its own rules of procedure, standards and policies and the Judicial Council has the discretion to adopt some of those rules statewide. (*Ibid.*) Hon's reading of existing rules and statutes to

challenge the constitutionality of section 68612 of the Act or the Fast Track rules fails to comprehend the experimental nature of the program set up by the Legislature to reduce delay in civil proceedings.

### C

Hon's specific assertions against the propriety of sanctions in this case are similarly meritless. Gleaned from his arguments are assertions that Fast Track rule 10.7(b)(5) affords insufficient due process under the due process clause of the United States Constitution for the imposition of monetary sanctions upon failure to file a joint at-issue memorandum; that it impermissibly fails to require a statement of reasons for imposing such sanctions as mandated by Code of Civil Procedure section 177.5; that it is not rationally related to an overriding state objective; and that its application is inappropriate in his case because he is not ready to go to trial.

 While it is true that adequate notice and an opportunity to be heard before imposition of sanctions is constitutionally required (*O'Brien* v. *Cseh* (1983) 148 Cal.App.3d 957 [196 Cal.Rptr. 409]), under the facts of this case, Hon cannot complain that he was not accorded due process on the issue of sanctions.

The trial court here imposed $150 in sanctions against Hon for failure to comply with its Fast Track rule by untimely filing a joint at-issue memorandum. Sanctions were imposed only after an OSC was issued and a hearing conducted to determine whether they were warranted. This was the second time an OSC had issued and a hearing had been conducted on the same rule violation. The first sanction imposed had been removed after an ex parte hearing in which Hon explained to the court's satisfaction good reason why the memorandum had not yet been filed. Upon his representation to the court that the parties were ready to proceed, a new date was set for filing the joint at-issue memorandum.

As already discussed, the clear purpose of Fast Track rule 10.7(b)(5) is to require a party or counsel to comply with the procedure adopted in Fast Track rule 10.7(a), the filing of a joint at-issue memorandum, in furtherance of the objectives of the Act to reduce trial delay. The Fast Track rule itself provided Hon with notice that if he failed to comply with it he might be subject to sanctions. (See *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d 491.) He bears the professional responsibility to be aware of and knowledgeable about this local rule. (*Beverly Union Co.* v. *Superior Court, supra,* 206 Cal.App.3d 40, 43.)

■■■■ In addition, the record shows he was afforded notice of the hearing on sanctions. While he could have utilized the Fast Track rules to file some opposition to the OSC for imposition of sanctions, he did not. (See Fast Track rule 10.2(c), which allows written response to an OSC five court days in advance of the hearing.) Nor did he contest the fact that the joint at-issue memorandum was not timely filed as ordered. Nothing in the record shows he was deprived of his right to speak out at the hearing on the issue of why sanctions should not be imposed. Hon simply has not shown he was deprived of constitutional standards of due process in the imposition of sanctions in this case.

■■■■ While Code of Civil Procedure section 177.5 requires an order imposing sanctions under that section "shall be in writing and shall recite in detail the conduct or circumstances justifying the order," no specific Fast Track rule requires such a statement of reasons for the imposition of sanctions for violation of its own rules. Assuming, however, reasons were required for imposition of sanctions under the Fast Track rules, the court here stated sufficient reasons on the minute order to comply with Code of Civil Procedure section 177.5. The minute order made at the second hearing shows the court specifically found a violation of one of its local rules. It also stated the joint at-issue memorandum was not filed until February 18, 1988. Because the court's earlier ex parte order required Hon to file the memorandum by February 9, 1988, it can be inferred the second court found Hon also failed to comply with a specific order of the court.

■■■■ Moreover, contrary to Hon's assertion otherwise, Fast Track rule 10.7(b)(5) is rationally related to an overriding state objective of trial court delay reduction. It was enacted by the San Diego Superior Court pursuant to its legislative mandate as one of the nine project courts and in furtherance of the Act's explicitly stated purpose to reduce trial delay. And, it specifically addresses the valid statewide purpose of compelling compliance with procedures enacted under the Act. (§ 68609(d).)

■■■■ In conclusion, we believe application of the Fast Track sanctions to Hon was particularly appropriate. His was a simple case of clear violation of applicable rules. If he had an excuse for failing to file the joint at-issue memorandum (asserted on appeal to be lack of readiness for trial), he waived the same by not raising it at the OSC hearing. Hon, therefore, cannot now complain the trial court improperly imposed sanctions on him.

## CONCLUSION

The order imposing sanctions is affirmed.

Todd, Acting P. J., and Froehlich, J., concurred.

A petition for a rehearing was denied April 10, 1989, and appellant's petition for review by the Supreme Court was denied May 23, 1989.